GANNAWAY v. TOLER *et al.*

[In Banc. No. 21016.]

1. VENDOR AND PURCHASER. *Prompt exercise of option of forfeiture of land contract required.*

   Equity does not view forfeiture with a favorable eye, and, where the optional right to forfeit is invoked under the terms of the contract of sale in which the time of payment is the essence thereof, the option of forfeiture must be exercised promptly.

2. VENDOR AND PURCHASER. *Vendor's failure to promptly forfeit contract constitutes waiver.*

   The vendor, who has the whip hand in the optional contract of forfeiture, must seasonably exercise his option after default is made by the vendee; otherwise his failure to do so will be taken to evidence his purpose of continuing the contract, which amounts to a waiver of his right to a forfeiture.

3. VENDOR AND PURCHASER. *Option of forfeiture must be promptly exercised where time is of essence.*

   Where the time of payment is the essence of the contract of sale, it was as much incumbent upon the vendor to act promptly in the exercise of his option of forfeiture, as it was incumbent upon the vendee to pay the exact amount due by him at the time specified in the contract.

4. VENDOR AND PURCHASER. *Power and conditions under which equity will enforce forfeiture of contract stated.*

   Courts of equity will uphold contracts as they are written, and enforce forfeitures against the defaulting party; but, where the power of option is solely in the hands of one of the parties, it is just and equitable that the party with the advantageous position shall act with promptness at the earliest reasonable time in deciding whether he will terminate the contract, after default of the other party.

5. VENDOR AND PURCHASER. *Holding check for three months held to constitute waiver of right to forfeit for nonpayment.*

Where the vendor in such contract received from the vendee a check for five hundred dollars with notice written upon it that it was for the payment on the land mentioned in the contract, and the vendor silently held the check for three months, for no apparent good reason, then returned it with his notice of forfeiture, without giving the vendee reasonable opportunity to comply with the contract by paying the exact amount then due, the vendee acting in good faith, such conduct was a waiver of vendor's right to declare forfeiture.

6. VENDOR AND PURCHASER. *Three months delay in declaring forfeiture of land contract held unreasonable.*

The delay of three months in declaring the forfeiture, while retaining the *bona-fide* payment made by the vendee, and during which time the property was changing in value, *held,* in this case to be unreasonable, and was a waiver of the option to forfeit; such conduct not squaring wholly with good conscience and equity.

7. VENDOR AND PURCHASER. *Notice of forfeiture held to preclude necessity of tender by vendee.*

Where the vendee failed to pay the full amount due, notice of forfeiture and termination of the contract by the vendor precluded the necessity of the vendee making any further tender, as such would have been a useless formality. Notice of forfeiture and cancellation, and to vacate the premises, warranted the vendee in assuming that any further tender would be rejected, and would be a vain and useless thing.

8. SPECIFIC PERFORMANCE. *Waiver of forfeiture and cancellation without notice makes tender by vendee unnecessary.*

Waiver by the vendor of the exercise of his option of forfeiture, thus continuing the contract, and its abrupt cancellation without notice, puts the vendor, in a measure, in default, making it unnecessary for the vendee to make further tender.

ETHRIDGE, J., dissenting.

APPEAL from Chancery Court, Bolivar County;
HON. W. F. GEE, Chancellor.

Suit by W. J. Toler and another against R. J. Gannaway for specific performance. Decree for complainants, and defendant appeals. Affirmed.

*Shands & Jackson,* for appellant.

If the court will take the trouble to read the authorities cited by appellees, with the facts in mind they will agree with me in my contention that none of them can be taken as a precedent by this court in holding that Gannaway had waived any of his rights to declare the contract forfeited.

I wish to call the court's attention to the facts in cases cited by counsel for appellees. His first citation of authority is from 36 Cyc., page 714, which declares the rule of waiver, and gives as a reason for such rule, the language underscored in appellees brief as follows: He should not permit the purchaser to spend money and labor on the land relying upon the existence of the contract.

This authority thereby recognize the rule of reason referred to by me above. He next cites an excerpt from Cyc. volume 39, pages 1391-92, wherein the author again states the general rule. The same author continues on pages 1393, 94, and part of 95 to give illustrations applying the rule of reason, as does this authority every other place were the subject is discussed.

He next cites the case of *Cue, et al.,* v. *Johnson,* 85 Pac. 598, in which the supreme court held that the vendor had waived his right to declare forfeiture; but it predicates such holding upon an expressed agreement made by the vendor at the time of default to grant to the vendee additional time within which to make the payment, and after doing this the vendor changed his mind and decided to declare a forfeiture.

The court holds in that case that the granting of additional time was what operated as a waiver. The case of *Van Dyke* v. *Cole,* 70 Atlantic, 593, cited by counsel for appellees is different from the case at bar in this very material particular. After default was made by the vendee, the vendor recognized the contract as still in force and

effect, in fact sold the land to a third party subject to contract, and at the time of such sale assigned the note to such second grantee.

The supreme court of North Dakota in the case of *Farguson* v. *Talcott,* cited by counsel, reported in 73 N. W. 207, holds that the right to declare forfeiture in that case was waived; but the facts were that the vendee had applied for an extension of time, and at the time of making such application the vendor gave no positive answer one way or the other, but held them off and led them to believe that he was going to grant the extension applied for, and the vendee relied upon this; continuing to make every effort up to the time they were notified of the forfeiture being declared.

The court held this conduct to be inequitable and to operate as a waiver. The case of *Gaughen* v. *Kerr,* 99 Iowa, 214, and 68 N. W. 694, relied on by counsel as authority for the waiver in this case does hold that the vendor waived the right to declare the forfeiture. The case of *Burroughs* v. *Jones,* 79 Miss., 214, is a very different case from the case at bar.

The court at page 219 says: "Now, here Craig had so improved the premises that they were worth several times more than the purchase price. He had paid a cash payment, and also the first deferred payments, and within a short time after the last payment became due tendered all the money due under said contract."

On this state of facts our court reaches a conclusion which is stated in a quotation, from the case of *Cheney* . v. *Libby,* 33 U. S. L. E. 823, is as follows: "Even where time is made material, by express stipulation the failure of one of the parties to perform a condition within the particular time limited will not, in every case defeat his right to specific performance if the condition be subsequently performed without unreasonable delay. And no circumstances have intervened that would render it unjust or inequitable to give such relief."

In the case at bar, though appellees' attention was forcibly called to the default on the 23rd day of August they had never, up to that time of the trial, paid or offered to pay Mr. Gannaway a single cent; but after they were informed that time of payment would be strickly insisted upon, they willfully failed and neglected, for a period of two years to make anything that even they claimed could be treated as a tender, and until a time when the land had enhanced in value one hundred dollars per acre, according to the testimony of Toler, himself.

I have not been able to find the case of *Monroe* v. *Taylor,* cited by counsel and so cannot discuss it; but I have found the case of *Cheney* v. *Libby,* 134 U. S., which case does not decide the proposition at all as to whether the vendor, by failing to act promply in declaring the forfeiture, waived his rights. They predicate their decision upon the proposition that vendor himself purposely made it impossible for vendee to comply with the provisions of the contract, which called for payment in gold coin or legal tender notes.

The payment was due to be made at a certain bank on a certain day. The vendor had a short time before this written to the vendee in answer to the request for an extension of time if he would consider it; that he would probably be away from home for some time, but that the delay in answering should not prejudice the vendee. Then on the day that the payment was due, he went to the bank, which I presume was the only bank in the town, and drew out all of the legal tender notes, for which he had no earthly use except to prevent the vendee from getting them.

The vendee offered to pay him in current funds, which he declined to take, and then immediately hid out.

Within fifteen months afterwards, the vendee succeeded in finding some legal tender notes, and had his attorney to try to find the vendor, but he had, in that fifteen months' time wholly disappeared.

This tender of legal tender notes was made on the very day that the payment was due, but about fifteen minutes after banking hours, and the supreme court of the United States predicates its finding in this case upon the fact that the vendor had actively taken steps to prevent the payment being made.

The case of *Camp Manufacturing Company* v. *Parker*, 91 Fed. 705, is upon a very different contract. In that case the contract provides that "on the failure to make any payments when due, vendee shall be given a notice of ten days, and if the payment is not made within that time the agreement shall terminate."

After default was made in one of the payments, the vendor wrote two letters to the vendee asking him about the amount of timber cut, etc., but the court says in discussing these letters, "Neither letter contained any reference to the termination of the agreement, but they asked information in regard to the number of acres of timber as shown by the survey, and upon which the amount of payment depended."

Plaintiff was unable to give the amount shown by the survey; delayed a few days, and then sent a check, which was in reality, slightly in excess of the amount due. After the check was received, the vendor determined to declare a forfeiture, and the court in that case held that he could not do so because the letters written by the vendor were insufficient as notice to work a forfeiture under the terms of the contract. There is no suggestion in that case that any delay in declaring the forfeiture deprived the vendor of his right to insist upon it.

The case of *Shouse* v. *Doane*, 21 So. 807, is also a case in which the supreme court of Florida says the vendor, after default "by deliberate acts recognized the contract as still subsisting" and the vendee was led to act to his prejudice by reason thereof. I have not had access to the case of *Mound Mines Co.* v. *Hawthorne*, 173 Fed. 882, but

judging from the context of the note from which the authority is obtained by counsel for appellees, I presume it holds the same doctrine as is announced in the case of *Camp Mfg. Co.* v. *Parker, supra.*

The case of *Mirkle* v. *Ball,* 54 So. 1000, holds that specific performance could be enforced in that case because vendor never undertook to declare forfeiture; that he lived some time after default was made in the payment and died, and no one undertook to declare forfeiture until suit was brought. I presume the case of *Gardner* v. *Donalson,* 7 S. E. 163, was cited through inadvertence, as this case discusses the validity of a tax sale.

The case of *Iowa R. Land Co.* v. *Mickel,* 41 Iowa, 402, is an authority very strongly in our favor. In that case the note fell due on Sunday, the next day it was paid in full, with the exception of three dollars. A few days after that the remaining three dollars was paid, yet the Iowa court held that equity would not relieve against the forfeiture in that case.

The case of *Gaughen* v. *Kerr,* has already been discussed by me. The case of *Studdard* v. *Hawkins,* 78 S. E. 116, like the case of *Cheney* v. *Libby,* discloses the fact that the default was a result of an active inducement on the part of the vendor.

The case of *Thayer* v. *Wilmington Star Min. Co.,* 105 Ill. 540, is different from the case at bar in that in the Thayer case after the default was made in the payment, the vendor recognized the existence of the contract by affirmative act and undertook to enforce payment of that instalment. In order to sustain his position that a tender was not necessary, counsel cited the case of *Askhurst* v. *Peck,* 101 Ala. 509.

I do not think that this case taken as a whole means what counsel contends; but if it does it is directly in conflict with the holding of the supreme court of Mississippi. See *Kyce* v. *Broyles,* 37 Miss. 524, discussed in our original brief. In the case of *Taylor* v *Newton,* 44 So. 583,

and *Zirkle* v. *Ball*, 54 So. 1000, the court excuses a tender being made because the bill and facts show that the vendee did not know the amount due and could not ascertain the amout due, and the vendor refused to state to him what it was, so when he filed his bill reciting these facts, he did all that it was possible for him to do.

In the case at bar there was no doubt whatever as to the amount due. No difficulty about appellee knowing the correct amount, and the only excuse made for the tender is that he failed to look at his contract to see the amount that was due. Counsel next cites 36 Cyc., page 702, to the effect that it is held in some cases that a tender by the vendee before suit is unnecessary; but by reading the next section the court will see that these cases are exceptions to the general rule.

To sustain the position taken by counsel that the tender was unnecessary, after the five hundred dollar check had been declined, and Mr. Gannway had declared forfeiture of the contract, appellees cite the case of *Post* v. *Garrow*, 26 N. W. 580, from the supreme court of Nebraska. That was a suit by vendee of certain cattle for breach of contract to sell at so much per pound.

Failure to make tender was set up as a defense, to which plaintiff replied that he did not tender because the cattle were in possession of the vendor, and the vendor refused to permit them to be weighed, so that plaintiff could know how much to pay, furthermore the rule as to tender in the suit for specific performance is altogether different from the rule as to action for damages on breach of contract.

He also cites the case of *Ielricks* v. *Artz.*, 21 Md. 524. I have been unable to get access to this case but the syllabus paragraph as published in the Century Digest is to the effect that where a vendor of merchandise has tendered the merchandise and has been refused, he does not again have to tender, with his declaration.

Counsel would cite the case of *Cheney* v. *Libby* and quotes that part of the opinion holding that it was unnecessary for Libby to tender notes maturing in 1886 and 1887. That was because he had already made a valid tender of the notes due in 1885, and furthermore Cheney had put himself in position where he could not comply with the terms of his contract, and had been guilty of positive and affirmative fraud.

In the Mississippi case, *Byers* v. *McDonald,* 99 Miss. 42, the court at page 46 says: "Under the facts of this case, admitted by appellee, appellants were not due to make him tender of a transfer to the right to sell the machine in Harrison County before suing on the note."

In that case the note on which suit was brought was made payable before the patent right was to be transferred and liability upon the note was not at all dependent upon the patent right ever being transferred, and it was for this reason the court held the tender of the patent before suit brought was unnecessary.

In the case of *Wilburn* v. *Bishop,* 62 Miss., the vendee did not know, and after making diligent inquiry was unable to find out what amount was due, and was for that reason excused for not making tender.

In the case of *Bowling* v *Bowling* 88 Miss. 147, as a basis for this holding that a tender of the deed was unnecessary calls attention to the following facts: "She was repeatedly seen by J. M. Bowling, and requested to either restore the land, or pay the money or to take time and pay rent for it. Finally she refused to do either, or to do anything unless compelled by the courts, not intimating that her refusal was because no conveyance was tendered to her. Tender was unnecessary under these circumstances. All the cases requiring it are when the obligations under the writing were dual; or where they were made so by part or full payment or ratified by the vendee by filing a bill to compel performance."

In the case at bar, appellant gave as the sole reason for his refusal to be bound by the contract, the fact that the appellees had not paid or offered to pay the money due him on May 20th, and furthermore this is a case where the vendee is filing a bill to compel specific performance.

In the case of *Peevy* v. *Hampton,* 77 Miss. 918, the contract called for payment to be made in cotton. The vendee could not obtain the cotton; but in lieu thereof tendered the money value of the cotton, which the court held was a sufficient tender. Counsel evidently cited the case of *Noland* v. *Snotgrass,* 70 Miss. 798, without reading it for this case certainly holds no such doctrine as that the offer to pay in the bill is sufficient. The court in the closing lines of the opinion says, after speaking of the fact that the note as given for purchase money was barred by the statute of limitation.

But no lapse of time is an excuse for the non-performance of a condition precedent to the accrual of a right to call for performance by another of an act to be done on the performance of such condition.

In the case at bar Gannaway was under no obligation to convey until Toler & Stone had first made all of the deferred payments. They were conditions, precedent to the accrual of the right of action in Toler & Stone, and these conditions precedent not having been met, no right has ever accrued to Toler & Stone.

In the case of *Cood* v. *Reynolds,* 58 Miss. 243, the court holds that there is no right of action in the vendee of land to maintain the suit until there has been a payment or tender of payment, which he could not pay earlier because there was no administration on the estate of the payee who had died, and his heirs were minors, and there was no one to whom he could make payments except to the chancery court; but Judge Campbell in that case makes it clear that the bill for specific performance cannot be maintained in Mississippi unless the complainant, as

far as is humanly possible, himself complied with the provisions of the contract before going into court.

I think the position taken by counsel's citation of 38 Cyc., page 141, is an answer to the duty appellees were under to pay the six hundred and seventy-five dollars for the simple reason that the payment was declined because of insufficiency in amount and for no other reason.

If a tender of a check that is in amount too small is made me and I decline it, giving as my reason for doing so that the payment is by check and not in legal tender, I would be held to have waived the amount; but certainly not when I return the check giving as my only reason therefor that it is for too small an amount.

The Mississippi authorities cited in our recent brief required tender as a condition precedent to the maintenance in this suit for specific performance.

What is required to be done in order to make good tender is very clearly set out in 38 Cyc., pages 137, 138 and 139. This authority stating "A mistake in tendering an amount less than the sum due is a misfortune of the tender, and a position of the party remains the same as if no tender had ever been made." *Smith* v. *Pilcher*, 50 S. E. 100, and cases cited in note 33, page 137, volume 38 Cyc.

Counsel for appellee seems to have convinced themselves that the equities in this case are all in their favor and that they are so overwhelming that this court should be impelled thereby to disregard the provisions of a solemn contract made a basis of their suit, and the law which has been settled in Mississippi since the beginning of time, and so well settled that the court in the case of *Klyce* v. *Broyles,* expresses a surprise that the question could again be mooted in this court.

It seems to me, however, that he has badly fooled himself as to the equities.

Equity aids the careful and not the negligent. In the question at bar, appellees had possession of this land, with the crop thereon, the year of the purchase. Their

thousand dollar payment was to be fair rent for the property. Confessedly they negligently failed to make the five hundred dollar payment due May 20, 1917. Their failure was called to their attention by letter on August 23rd. They did not thereupon undertake to right the wrong done Mr. Gannaway by them, by tendering the amount to him that was due on May 20th, with interest thereon, but kept their money, using it about their own business, depriving him of the use of his land, and of the use of the money.

This continued until May 20, 1918, when they had promised to pay him another payment on his land. Though they knew he was insisting that time was of the essence of the contract and was demanding his money, they kept the money due at the time and refused to pay it. The final payment became due May 20, 1919, and they did not at that time tender to him one cent of money. In the meantime the land had enhanced in value one hundred dollars per acre, according to the statement of Toler himself. Counsel claims that Mr. Gannaway was guilty of inequitable conduct in not declaring this forfeiture more promptly.

He waited about three months to do what they say was his duty, which was to declare a forfeiture. During these three months, the property, according to the testimony of Mr. Toler, did not enhance in value one cent, and he did not spend one cent on it in making improvements. Toler & Stone never offered to pay to Gannaway any of the deferred payments prior to the time of the rendition of the final decree until three years after the first deferred payment became due. Ganaway was deprived all of this time of the use of his money. During all of this time appellees were in possession of the property, enjoying its rents and profits without putting up any money.

If the land had gone down in the meantime we would have found them not filing their amended bill, as was done on May 20, 1919, and not making a tender. If this court

should hold now that they could maintain their bill for specific performance, though they were confessedly refusing to make payments. The effect of it would be that a man could contract to buy land, not pay anything until his last payment is due, and then if the land has enhanced in value one hundred dollars per acre, he could make his payments.

If it had gone over that he would have had the advantage of having had the use of his money during all of the time would have had the rents and profits coming from the use and enjoyment of it, with the right at all times, if he sees fit, to abandon his contract. I do not presume the court intends to give a man who is in default on his payments, any such unconscionable advantage. They have already had four years' use of this land, with a rental value of two thousand dollars per year.

Had Toler & Stone paid, or offered to pay, the amount that they were in default, promptly upon its being called to their attention, and then promptly, if such amount was not accepted, have paid same into court, and continued to make the payments as they fell due, their case might appeal to a court of conscience; but certainly when they have kept this old man from the enjoyment of his property during these fat years and have themselves used the purchase money and interest thereon, which they had solemnly promised to pay him annually, their case should not appeal to this court's conscience.

Wherefore, we respectfully submit that the decree of the court below should be reversed and judgment entered here dismissing the bill.

*Roberts & Hallam,* for appellee.

Appellant here complains that the lower court erred in entering the decree appealed from, because, first, he contends that the appellees forfeited their rights under the contract by failing to pay the annual interest of one

hundred and seventy-five dollars, falling due on May 20, 1917, the day of the maturity of the principal payment of five hundred dollars and as supporting this contention calls attention to the fact that the contract provides that "time of payment shall be the essence of this contract."

In considering the effect of this clause, however, it is necessary to look at the whole contract, and when this is done we find that default in payment does not *ipso facto* cancel the contract, for included in the contract is also the provision: "And the case of the failure of the said parties of the second part" (the appellees) "to make either of the payments, or any part thereof, or perform any of the covenants on their part made and entered into, this contract shall at the option of the party of the first part, be forfeited all payments made by them on their contract," etc. In other words, it was necessary, before the contract could be deemed forfeited, that the appellant should act, should exercise his option, and the question then naturally arises, at what time should he act? When should he exercise the option—at the time of the default, or more than three months thereafter? Will he be permitted to receive the principal payment on the day it is due, hold the check covering the payment for three whole months, and then, at the expiration of the three months' period, without in the meantime calling appellee's attention to the omission or giving them any sort of opportunity to make good the default and without saying or writing a word to them, declare the initial payment forfeited and the contract forfeited and cancelled, because the interest due when the payment was made had not been included, or has he thereby waived his rights? Will he be permitted to hold the check for three months and by his silence lull the appellees into security, at the same time inducing them to continue to clear, improve and enhance the value of this land relying upon the existence of the contract, and then cancel the contract, refuse to return

the cash payment of one thousand dollars, take back the land and secure to himself the benefits of the labor and money expended by appellees in improving and clearing the same, or is he by such conduct estopped so to do? The mere statement of these questions seems to us to answer them, or else conscience, fair play and honesty have been dethroned, and unscrupulous advantage, sharp dealing and plain dishonesty have usurped their places. If Shylock demands his pound of flesh because it is "so nominated, in the bond," let us take it only according to the legal effect of the bond. The printed form of the bond used in the case at bar does not contain the provision that a forfeiture shall be declared, if at all, at the time of the default (and not three months thereafter) yet the law writes into the bond such a provision, and the appellant is bound by it and must govern himself accordingly, else he shall not have his pound of flesh.

That the right to a forfeiture will be waived, unless promply claimed at the time of its accrual is settled by this court and is the general rule, thus: "In many cases the contract gives the vendor an election to declare a forfeiture on default by the vendee; in this case the right to forfeit must be exercised promptly, or will be deemed to be waived." 36 Cyc. 714, 39 Cyc. 1391-2, 39 Cyc. 1608-1609; *Cul* v. *Johnson,* 73 Kan. 558, 85 Pac. 598; *Van Dyke* v. *Cole,* 81 Vt. 379, 70 Atl. 593, 1103; *Fargusson* v. *Talcott,* 7 N. D. 183; *Gaughen* v. *Kerr,* 99 Iowa 214, 39 Cyc. 1382, 39 Cyc. 1608-1609.

1. That forfeiture will not be upheld unless promptly invoked at the time specified, is sustained by Fry, Sep. Perf, secs., 709, 710; *Monroe* v. *Taylor,* 8 Hare, 62; *Chaney* v. *Libby,* 134 U.S. 78, 110 S. Ct. 502, 33 L. Ed. 823; *Burroughs* v. *Jones,* 79 Miss. 214; *Hennessey* v. *Woolworth,* 128 U. S. 438, 442, 32 Miss. 300, 501, 33 L. Ed. 823; *Camp Mfg. Co.* v. *Parker,* 91 Fed. 705, 63 U. S. App. 668, 34 C. C. A. 55; *Shouse* v. *Doane,* 39 Fla. 95, 21 So. 807;

*Mound Mines Co.* v. *Hawthorne*, 173 Fed. 882, 97 C. C. A. 394.

We invite the court's special attention to these cases, Ann. Cas. 1913, D. P. 930; *Zirkle* v. *Ball*, 171 Ala. 568, 54 So. 1000; *Gardner* v. *Donalson*, 80 Ga. 71, 7 S. E. 163; *Iowa R. Land Co.* v. *Mickel*, 41 Ia. 402; *Gaughen* v. *Kerr*, 99 Ia. 214; *Rea* v. *Ferguson*, 126 Iowa, 704, 102 N. W. 778; *Burroughs* v. *Jones*, 79 Miss. 214, 20 So. 695; *Fargusson Fargusson* v. *Talcott*, 7 N. D. 183; *Pier* v. *Lee*, 14 S. D. 600, 86 N. W. 642; *Hall* v. *Deaplaine*, 5 Wis. 215, 68 Am. Dec. 57; See also 2 Black on Res. & Can., pp. 1397 and 1405: And further: Notwithstanding the fact that there has been a forfeiture, the contract will be specificially enforced where it appears that the vendor has done something amounting to a waiver of the forfeiture. Citing: *Shouse* v. *Doane*, 39 Fla. 95, 21 So. 807; *Studdard* v. *Hawkins* (Ga.), 78 S. E. 116; *Thayer* v. *Wilmington Star Min. Co.*, 105 Ill. 540; *Reed* v. *Chambers*, 6 Gill. & J. (Md.) 490; *Rausch* v. *Hanson*, 26 S. D. 273; *Devlin* v. *Radkey* 22 Ont. L. Rep. 399.

From the foregoing it is clear that Gannaway owed to the appellees the duty to inform them promptly of his decision to forfeit the contract, and having failed to do so and having induced them to believe for three whole months that the contract was still in existence, and in reliance thereon to improve the land, he has waived his right. In this case a tender was made in time, promptly on the day of maturity and tho in the form of a check, there was no objection on that ground, but three months later the tender is objected on the sole ground that the amount of the tender was insufficient. As the appellant did not object to the amount of the check promptly when the same was tendered to him, he waived it. 38 Cyc. 141.

Secondly, it is insisted by appellant that the appellees cannot prevail in this suit because of their failure to tender before suit, the amount due under the contract, and

because of their failure to pay into court on May 20, 1919, the time the payment into court was made, a sum of money to cover the court costs accrued.

Taking up first the last feature of this contention, that a sum to cover costs was not deposited in court, we call the court's attention to the fact that it is the general rule that where a party comes into equity seeking specific performance he thereby submits to do such things as a condition to the attainment of the relief sought as may be equitable. Not only is this true, but in and by the amendment filed by the appellees on May 20, 1919, they not only tendered into court at the first moment that they had the right under their contract to demand a deed all sums represented by the deferred payments, with interest, but they also offered to do and perform all things that may seem equitable." In other words, the appellees not only paid into court the full amount of principal and interest due, but they offered to submit themselves to the doing of any other thing including the payment of costs, that equity and good conscience required. As it was, the court below straining a point to give the appellant every advantage that equity would permit, required of the appellees the doing of more than under a strict construction of the rights of the parties could be demanded, for the court required that the appellees not only pay the court costs, but also that they pay interest at seven per cent from the date of the tender into court to the date of the decree, and, as demonstrating the correctness of the rule above laid down, in order to attain the relief sought the appellees were bound to pay both; and the decree recites that they did do so. *Ashurst* v. *Peck*, 101 Ala. 509, 14 So. 541; *Taylor* v. *Newton*, 152 Ala. 459, 44 So. 583; *Cirkle* v. *Ball*, (Ala.), 54 So. 1000, 36 Cyc., 702.

"Tender of offer before suit excused: Where the vendor has repudiated the agreement, thus making it appear that if the tender were made its acceptance would be re-

fused, tender of offer by the vendee before suit is unnec-
essary. Equity does not require a useless formality."
36 Cyc. 705, and note 19.

"Similarly a tender is waived where the tenderee
makes any declaration which amount to a repudiation of
the contract or take any position which would render a,
tender, so long as the position taken by him is main-
tained, a vain and idle ceremony; as where he expressly
declares that he will not accept the tender if it is made,.
or in any way obstructs or prevents a tender, as by de-
claring positively that nothing is due, by admitting that
a tender would be fruitless, or by declaring the contract
to be at an end." 38 Cyc. 136; *Post* v. *Garrow,* 18 Neb.
682, 26 N. W. 580; *Oelrichs* v. *Artz,* 21 Md. 524, the above
texts are abundantly supported by the decided cases. 33
L. Ed. 824; *Bateman* v. *Hopkins,* 157 N. C. 470; Ann Cas,
1913C, p. 642, and note; *Harris* v. *Greenleaf,* (Ky.) 4 A.
& E. Ann. Cas. 849, and note; *Byers* v. *McDonald* (Miss.),
54 So. 664, 99 Miss. 42, 62 Miss. 349, 88 Miss. 144. And
that an offer to perform contained in the bill is sufficient,
see: *Peevy* v. *Haughton,* 72 Miss. 918, 17 So. 378, 18 So.
357; *Nolan* v. *Snodgrass,* 70 Miss. 797; *Cook* v. *Reynolds,*
58 Miss. 243. "A tender does not have to be made where
it is made clear beforehand that if made if would be re-
jected. *Insurance Co.* v. *Smith,* 44 Ohio St. 170, 5 N. E.
417." *Union Cent. Life Ins. Co.* v. *Cardwell,* (Ark.), 58 S.
W. 360.

It being plain that any tender that might have been
made after the declaration of forfeiture would have been
refused, under the above authorities no tender was nec-
essary before suit filed. (And what we have here said ap-
plies with equal force to each installment of the deferred
payments. There was nothing during all this time to in-
dicate to appellees that appellant had changed his mind).
Nothing was left to the appellees to do, therefore, but to
file their bill, and it was necessary that they should act

promptly, else they would have been held to have acquiesed in the notice. The rule that a party must act promptly in asserting his rights under a contract after notice of forfeiture is thus stated: "Delay after repudiation by other party; if one party gives the other notice that he does not hold himself bound to perform, and will not perform, the contract and the other party makes prompt assertion of his right to enforce the contract equity will consider the latter as acquiescing in the notice, and as abandoning his equitable right." 36 Cyc. 728.

The appellees could hardly have acted more promptly, as they filed their original bill in this case on the day after the receipt by them of the notice. If they had not done as they did, appellant would be here contending that they had waited too long.

Counsel for appellant, in the lower court, cited an array of Mississippi authorities, involving the right of a vendor to bring suit for purchase money to land without having first "made or tendered to defendant a deed for the land, and demanded the purchase money, so as to put the defendant in default before filing said bill," among them the case of *Kylce* v. *Broyles*, 37 Miss. 524, wherein Judge HARRIS, holding that the vendees were not in default until a tender of performance by the vendor, said:

"The cases are numerous and uniform in this court to this point, and we can but express surprise to see the question again mooted at this late day." Citing the cases.

These cases (with others from foreign jurisdictions) are again relied on here by appellant, that the holding in those cases is perfectly good law, no one can deny, but that they are not in point here must be admitted, because in none of them was any effort made to make a tender before suit, as here and in none of them was there any question of waiver of tender as in the case at bar. Of these cases, to use an expression of the late Chief Justice, J. A. P. CAMPBELL in reference to certain supposed authorities,

10—122 Miss

cited by opposing counsel in a trial in which he was engaged, it may truly be said that: "they are no more applicable to the case at bar than one of Aesop's fables." All of them were cited by counsel for the appellees in the *Bowling case, supra,* and were by this court ignored because not in point. Tender was actually made before suit brought.

Before bringing this already too long brief to an end, we insist that the sending of the five hundred dollar check to the appellant on May 19, 1917, constituted a tender in law and in fact. It was sent by the appellees for the purpose of paying the full amount they then supposed to be due, was received by the appellant promptly on the maturity date; no objection was raised by appellant to the form of the tender and the appellees had a deposit in the bank on which it was drawn, sufficient funds to pay it if it had been presented for payment. Counsel in the lower court seemed to ridicule the idea that a check could, under an circumstances constitute a tender; but that such is not the law seems to be settled: "And similarly, although the general rule is that an offer of a bank check for the amount due is not a good tender if the tender of the check is refused, not on the ground that it is not legal tender, but upon some other ground, as that it is not drawn for the sum the creditor demands, or that it is not made in time. the objection to the check is waived and the tender is good as far as the medium of payment is concerned. and this rule extends to drafts and certificates of deposit." 38 Cyc., 146-147.

The appellant. not only did not decline the tender on account of the medium through which it was made. but in his notice of forfeiture he expressly characterized the check as a "payment." 95 Miss. 765. That a check. unless objected to is a sufficient tender. See: *Wright* v. *Robinson.* 32 N. Y. Suppl. 463; *Raymond* v. *McKinney* 58 Mo. App. 303; *Dale* v. *Richards,* 21 D. C. 312; *Mitchell* v. *Ver-*

*mont*, 67 N. Y. 280; *Murphy* v. *Gold & Stock Co.*, 5 N. Y.
St. R. 902, 3 N.Y. Supp. 804; *Jennings* v. *Mendenhall*, 7
Ohio St. 257; *Harriman* v. *Meyer*, 45 Ark. 37.

Nothing in *Collier* v. *White*, 67 Miss. 133, militates
against this contention, for in that case the tender of the
draft was refused because insufficient in amount and be-
cause it was in the form of a draft and was not money.
The statement of facts in that case contains this recita-
tion: "White then tendered to Faison & Co., his draft for
the sum of one hundred and twenty eight dollars and
seventy-five cents, which the latter refused to accept, be-
cause not for the full amount, and because it was offered
in the shape of a draft and not money."

The appellant here, not only did not object to the form
of the tender, but, by receiving the check on the day of
maturity, even tho for an insufficient amount, and holding
it for three solid months without murmur, he accepted the
tender. He had no fault to find with the form of the ten-
der, but three months later his objection was based solely
on the ground of insufficiency of the amount of the tender.
*Insurance Company* v. *Hunter, supra.*

If appellant was not satisfied with the amount of the
check, it was his plain duty to return it promptly; other-
wise, his objection to the amount thereof was waived.

"Waiver of objection to amount; an objection to the
amount of a tender must be taken at the time the tender
is made, otherwise it is waived." 38 Cyc. 141.

We conclude by saying that, in view of the fact that
all of the equities in this case are with the appellees and
none with the appellant; that the appellees have brought
themselves plainly within the letter of the law, while ap-
pellant can suffer no damage by the specific performance
of this contract but will thereby receive more than he is
justly entitled to, while the appellees will suffer great
hardship and loss should they be denied relief; the
decree of the court below should be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is a chancery suit for specific performance under a contract of purchase of ninety-one acres of land in Bolivar county. From a decree in favor of appellees Toler and Stone, complainants below, decreeing specific performance, this appeal is prosecuted by Gannaway, defendant in the lower court.

The contract of purchase upon which the complainants grounded their bill for specific performance is here set out in full, to wit:

"Articles of agreement, made this 20th day of May, 1916, between R. J. Gannaway, party of the first part, and W. J. Toler, Jr., and T. A. Stone, parties of the second part, witnesseth:

"That if the parties of the second part shall first make the payments and perform the covenants hereinafter mentioned on their part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure to the said parties of the second part in fee simple clear of all incumbrances whatever, by a good and sufficient warranty deed, the lots, pieces, or parcels of land situated in the county of Bolivar and state of Mississippi, known and described as: 'Lots thirty-eight and thirty-nine section 1, township twenty-four, range five containing ninety-one acres more or less, subject to the conditions noted below.' And the said parties of the second part hereby covenant and agree to pay to the said party of the first part the sum of thirty-five hundred dollars, in the manner following: One thousand dollars cash the receipt, of which is hereby acknowledged, five hundred dollars on May 20, 1917, and one thousand dollars on May 20, 1918, and the remaining one thousand on May 20, 1919. The said sum of three thousand five hundred not including the sum of two hundred and fifty dollars rent for 1916 for which the party of the first part already holds the

note of Smith & Toler due November 1, 1916, for which note parties of the second part agrees to be responsible, with interest at the rate of seven per cent., payable annually, on the whole sum remaining from time to time unpaid, and to pay all taxes, assessment or impositions that may be legally levied or imposed upon said land, subsequent to the year 1915. And in case of the failure of the said parties of the second part to make any of the payments or any part thereof or perform any of the covenants on their part hereby made and entered into this contract shall, at the option of the party of the first part be forfeited and determined, and the parties of the second part shall forfeit all payments made by them on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by him sustained, and he shall have the right to re-enter and take possession of the premises aforesaid.

"It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written."

After the execution of the above contract by all of the parties, the one thousand dollars was paid, and the appellees went into possession of the land and commenced to make valuable and permanent improvements thereon and to cultivate the same. The whole record reflects the fact that from the date of the execution of the contract the land began to increase in value, until at the final hearing of this cause in 1919 it had increased in value to the extent of more than one hundred dollars per acre.

On May 20, 1917, when the first payment of five hundred dollars and one hundred and seventy-five dollars interest on the whole amount of the balance of the purchase money became due, the appellees, Toler and Stone, mailed their check for five hundred dollars to the appellant, Gannaway, at Mattoon, Ill., his place of residence. This check was mailed on the 19th and received by the appellant on the 20th of May, 1917, the date the first deferred payment of five hundred dollars was due. The check was drawn on a Clarksdale bank in which there was sufficient funds to cover it. On the margin of this check was written the following: "To apply on purchase land contract due 5—20—17 of T. A. Stone and W. J. Toler, Jr." Toler testified that he wrote a letter to appellant and inclosed it with the check asking appellant to let him know what amount would be acceptable at that time as full payment of the balance of the purchase money, to which appellant did not reply.

The appellant, Gannaway, received this check and retained it in his possession for a period of three months without saying anything, when on August 23, 1917, he returned the check to the appellees and in the same inclosure served written notice upon appellees in the following language, after stating that the appellees had breached the contract by failing to pay the one hundred and seventy-five dollars interest due on May 20, 1917, to wit:

"Therefore you and each of you are hereby notified that on account of your failure to pay the interest of one hundred and seventy-five dollars ($175) the same being at the rate of seven per centum per annum on the whole sum remaining unpaid, to wit, two thousand five hundred dollars ($2,500), which said interest is payable annually and was due on May 20th, 1917, and under and by virtue of the said option given me in said articles of agreement, I have concluded to forfeit and determine the said con-

tract, heretofore referred to as articles of agreement, and all your rights thereunder, and I am therefore herewith returning to you the check for five hundred dollars (500).

"You are further hereby notified that on account of your failure to comply with said contract and to perform covenants heretofore made and entered into in this respect I have, under and by virtue of the said option given me in the said contract, have concluded to forfeit and do hereby forfeit all payments made by you and each of you on this contract and such payments shall be retained by me as the said party of the first part in said contract in full satisfaction and in liquidation of all damages by me sustained.

And you are, therefore, hereby further notified to vacate said premises without further notice or delay.

"[Signed] R. J. GANNAWAY."

The explanation given by appellees Toler and Stone as to why they failed to pay the one hundred and seventy-five dollars interest on May 20th, as provided by the contract, was that they inadvertently omitted to send the amount of interest along with the check for five hundred dollars. The appellant made no effort to explain or give any particular reason why he held the five hundred dollar check for three months, and said nothing before returning it to the appellees.

Upon receiving the notice from appellant declaring the forfeiture under the contract, the appellees Toler and Stone filed their bill for specific performance, setting up all of the facts and their willingness and ability to perform their part of the contract or to respond in equity as the court should decree. No tender of the amount due by appellees to appellant, except the five hundred dollar check was made before filing the bill nor afterwards, until May, 1919, when the entire balance of the purchase money became due, which they tendered into court.

Stripping the case of minor details which are of but slight importance, and coming to the decisive question involved, we think the case hinges upon one point, and that is whether or not the right of forfeiture under the contract, which was at the option of the appellant, was seasonably exercised by appellant, or whether he waived this right by receiving the five hundred dollar ·check from appellees and silently holding it for three months before exercising his option to cancel the contract..

Afer a careful consideration of this question, and keeping in mind that equity does not view forfeiture with a favorable eye, and the rule that where the right to forfeit is invoked under the terms of the contract in which the time of payment is the essence thereof the exercise of the option of forfeiture is required to be done promptly, we have come to the conclusion that the decree for specific performance of the lower court is correct in this case.

. The rule seems to be well settled in all jurisdictions that the vendor, who has the whiphand in the optional contract of forfeiture, must exercise his option promptly after default is made by the vendee; otherwise his failure to do so is taken to evidence his purpose of continuing the contract, which amounts to a waiver of his right to declare a forfeiture.

In the case before us, the time of payment being the essence of the contract, we think it was as much incumbent upon the appellant to act promptly in giving notice of forfeiture as it was incumbent upon the appellees to pay the full amount due by them on the dates specified in the contract. Of course, courts of equity will uphold contracts as they are written and enforce forfeitures against the defaulting party; but, where the power of option is placed in the hands of one of the parties to the agreement, the advantage over the other being so great, and so sus-

ceptible of abuse, it is but right, and a court of equity will so hold, that the party with the advantage of power in the contract shall act with promptness in deciding whether he will terminate the contract, and must do so at the earliest reasonable time after the default of the helpless party.

In the case at bar it appears convincingly to us that when the appellant, Gannaway, received the five hundred dollar check from appellees, with notice written upon the margin that it was for the payment on the land mentioned in the contract, and the appellant silently held this check for three months, for no apparent good reason, and then returned the check to the appellees, and at the same time declared the contract forfeited without giving the appellees any opportunity whatsoever to comply with the contract by paying the one hundred and seventy-five dollars interest, it was such conduct on the part of the appellant as to amount to a waiver of his right to declare the contract forfeited. There was nothing to prevent appellant from acting at once, insead of waiting for a time of advantage.

We are led to believe from the whole record that the land here involved was daily increasing in value from the date of the contract until the final decree in the case. It therefore was increasing in value between May and August, 1917, during the time that the five hundred dollar check was held by appellant. The land had been permanently improved by clearing, cultivating, and in other ways after the appellees took possession of it. We think it would be manifestly inequitable to say that the vendor in this case could receive the check for five hundred dollars with notice that it was to cover the first deferred payment, hold it for three months while he could observe the increase or decrease in the value of the land, and then return the check accompanied with the declaration and notice of forfeiture, before giving the vendees, who were

at his mercy, an opportunity to correct the mistake which was made in good faith, and pay the full amount due under the contract. The delay of three months in declaring the forfeiture was unreasonable. Such conduct does not square wholly with good conscience in dealings between man and man.

The cases cited by appellant are not in point on the question of waiver of option. Therefore the decision of the chancellor holding that the appellant by his conduct had waived the option of cancellation was equitable and correct. 39 Cyc. 1608; *Gaughen* v. *Kerr,* 99 Iowa, 214, 68 N. W., 694; *Fargusson* v. *Talcott,* 7 N. D. 183, 73 N. W. 207; *Burroughs* v. *Jones,* 79 Miss. 214, 30 So. 605; *Cheney* v *Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 823, Ann. Cas. 1913D, p. 930; *Mound Mines Co.* v. *Hawthorne,* 173 Fed. 882, 97 C. C. A. 394, 6 R. C. L. section 383.

But it is urged by the appellant that, even if it is held that the appellant waived his optional right on account of the three months' delay in his notice, still the decree of the chancellor must be reversed because the bill is not maintainable for the reason that no tender of the correct amount due by the appellees under the contract was made to appellant before filing the suit or afterwards. It is argued that, before the appellees could maintain their bill for specific performance, they should have first put the appellant in default by tendering the proper amount due under the contract, and, as this was not done, they had no right to the enforcement of the contract.

We think the point advanced is untenable for the reason that the notice of the forfeiture and termination of the contract by the appellant precluded the necessity of the appellees making any tender because to have done so would have been a useless formality. The notice of cancellation and to vacate the premises was sufficient to warrent the appellees in assuming that any further tender would be rejected. In fact, the notice amounts to a

declaration on the part of the appellant that any tender or further negotiation with reference to the purchase under the contract would be rejected. Under these circumstances equity does not require a tender, and it would have been a vain and useless thing in this case. If the appellant had not abruptly terminated the whole contract, and had he offered the appellees an opportunity to pay the full amount due, and the appellees had then refused to make tender, or pay the full amount due, they might possibly have been in default, and it would have been a different proposition. But the waiver by the appellant of the exercise of his option of forfeiture, thus continuing the contract, and the abrupt cancellation of the contract without notice, put the appellant, in a measure, in default under the terms of the contract, and no tender on the part of the appellees was necessary or required under the law. 36 Cyc. 705; *Cheney* v. *Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 824; 38 Cyc. 136; *Byers* v. *McDonald,* 99 Miss. 42, 54 So. 664; 6 R. C. L. 328.

Whether the appellant waived his right by not objecting to the amount of the five hundred dollar tender, we do not decide, although there is respectable authority so holding.

We think under the facts and circumstances of this case the appellees were not required to make a tender of the amount due appellant before filing their bill for specific performance. The offer in their bill to pay whatever amount that might be due the appellant and to perform any other thing that might be decreed by the court was sufficient for the purpose of maintaining the bill for specific performance under the contract. The decree of the lower court must be affirmed.

*Affirmed*

ETHRIDGE, J., (dissenting).

I feel impelled to dissent in this case on the following propositions held in the majority opinion, to wit: That under the terms of this contract the court will decree a specific performance for the vendee who failed to comply with the contract; and, second, that the vendees were not required to actually tender the money before bringing) their suit. As shown in the majority opinion, the parties made the time of the payment the essence of the contract; one clause reading as follows:

"It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract; and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties."

There is no statute forbidding contracts of this kind, and it is fundamental that where there is no statute forbidding, or where there is no immorality involved in the contract, the parties have a constitutional right to make such contracts as they may desire to make, and the court of equity will not grant relief to a party who is in default in the performance of his part of the contract. This is especially true as to specific performance which partakes of the nature of an extraordinary remedy.

This court in *Lewis* v. *Wood,* 4 How. 86, 34 Am. Dec. 110, announced the rule as follows:

"A court of equity will not decree a specific performance of a contract, where the party seeking relief has failed to comply with his part of the agreement, within the time appointed for that purpose, and on. the terms stipulated."

This decision was cited with approval by this court in *Bird* v. *McLaurin,* 4 Smedes & M. 50. In that case it was said in the first headnote to the case:

"Where a party buys land, and gives several notes for the payment of the purchase money, and takes a bond for title, when the last note is paid, he cannot come into a court of equity, and ask for a title, or a rescission of the contract, without having paid, or offered to pay, the whole of the purchase money."

In the case of *Tyler* v. *McCardle*, 9 Smedes & M. 230, the rule is laid down in the first headnote in the following language:

"Time is of the essence of a contract when the parties, by fixing upon a time for its performance, have indicated that time was regarded by them as important; or else it must result from the nature and circumstances of the contract."

In the third headnote it is said: "A party cannot obtain a decree for specific performance, without he shows a compliance or readiness to comply with his part of the contract."

See, also, *Hester* v. *Hooker,* 7 Smedes & M. 768; *McCorkle* v. *Brown,* 9 Smedes & M. 167.

In *Klyce* v. *Broyles,* 37 Miss. 524, it was held:

"A vendor who has executed a bond, to make title upon the payment of the purchase money, cannot maintain against the vendee a bill in equity for a specific performance of the contract, or to procure a sale of the land for the payment of the purchase money, until he has put the vendee in default by a tender of a deed and a demand of payment; an offer in the bill to make a deed and averment of readiness at all times to make it, will not do."

This principle has been cited with approval in *Robinson* v. *Harbour,* 42 Miss. 801, 97 Am. Dec. 501, 2 Am. Rep. 671; *Walker* v. *Brown,* 45 Miss. 617; *Kimbrough* v. *Curtis,* 50 Miss. 120.

These authorities, decisions of this court, established conclusively to my mind that the majority opinion is erroneous. The vendees in the present case having made a

contract in which they expressly agreed that time was the essence of the performance of the contract, and having failed to perform that contract as agreed and having knowledge of the contract, have no standing in equity. It might be different if they had paid or tendered the money subsequent to the time stipulated and before the forfeiture was declared. The vendor certainly had the right to stand upon his contract as written and, as he declared the forfeiture before the money was either paid or tendered, the vendees have no cause of complaint. It might also present a different question if the vendor was seeking relief in equity and seeking the powers of an equity court to enforce a hard contract. Equity might in such case refuse him relief on the theory and principle that it would not enforce a hard contract by the use of a remedy which is somewhat discretionary. I think the authorities cited above established the other proposition that before the complaint was entitled to invoke the aid of equity he must have actually tendered the amount due. See especially 37 Miss. 524. It was his duty to not only tender the money before bringing the suit, but to bring the money into court with his bill and maintain the tender so that if the defendant decided to accept the money he would be able to do so without delay or resort to other expense.

We have recently held that it was the duty of the party seeking the enforcement of a contract to convey to pay the money at the residence or business office of the other party. *Phelps* v. *Dana,* 83 So. 745 (March 8, 1920).