This is a suit by the buyer for breach of contract for purchase of a hotel and other *Page 803 
real property. It involves, among other issues, whether the buyer committed a material breach and repudiated the contract, so as to justify the seller rescinding it. Appellant, Gulf South Capital Corporation (called Gulf South), brought this action in the Circuit Court of Harrison County against M.M. Brown, executor of the Estate of Selma L. Bryan, deceased, the Estate of Bryan, M.M. Brown personally, and the surety on the executor's bond. The circuit court rendered judgment for the defendants, and we affirm.
Joseph C. Canizaro was president and apparently controlling stockholder in Gulf South. He negotiated with Brown, executor of the estate, and L.C. Corban, Jr., the executor's attorney, for the purchase of the Bryan Motel on the Gulf Coast. Canizaro and Brown thought they had agreed on the terms of the sale of this property by the estate to Gulf South. On June 17, 1964, Canizaro drafted and brought to Corban a sale contract. Brown returned to Texas, and told Corban that, when the contract was prepared and the earnest money put up, he was authorized to sign it for him as executor. The will gave the executor a power of sale. Corban then called Brown and told him that the contract was in accordance with their agreement, so Brown authorized him to sign it. Gulf South executed the contract by Canizaro, and the Bryan Estate under the name of Brown by Corban, attorney for the estate.
The contract is ambiguous in a number of particulars. The estate agreed to sell the property to Gulf South, and the latter would make all payments necessary to a savings and loan association, the first mortgage holder, "in order to bring the said loan up to date." Gulf South agreed to "honor Curro's agreement regarding payment of an additional one and one-half percent interest on whatever balance remains in the estate's escrow savings account." This was a collateral cash deposit with the first mortgage holder. Gulf South agreed to place its deed in escrow and to execute a $140,000 second mortgage in favor of the Bryan Estate, for the purpose of securing the $140,000 balance retained by the first mortgage holder. The estate reserved the right to approve the assignee of Gulf South, which agreed to close the sale within twenty-four hours after the estate gave notice in writing that it had title and was prepared to execute a deed to the purchaser. It was stated that, if the estate required more time, "the purchasers agree to close as soon as the Bryan Estate by court approval can execute the said deed." The underlined phrase was inserted in the typewritten copy in ink. The contract did not provide that Gulf South would assume the first mortgage, and did not state the total purchase price.
The next day, June 18, Corban received from Canizaro Gulf South's check payable to Corban's trust account for the estate, in the amount of $2500. Canizaro had typed on the bottom of the check the following:
 Good Faith Deposit on purchase agreement to buy Bryan Motel. This deposit returnable in the event good title cannot be conveyed to Gulf South or its assigns as specified in agreement dated June 16, 1964 or if suitable agreement cannot be reached on eliminating Materials Lien recorded against property by James J. Curro. It is understood that the mortgage being assumed to be for less than $350,000. and no other obligations other than those mentioned in agreement are being assumed.
The quoted part of the check, made by Canizaro, identified the $2500 as "a good faith deposit on purchase agreement." It referred to the first mortgage as "the one being assumed." And it added a provision the check was returnable "if suitable agreement cannot be reached on eliminating materialman's liens" of Curro, a former owner. This recorded lien was in the amount of approximately $50,000. It was a material, substantial condition added by Gulf South to its purchase agreement of the day before.
Corban testified that Canizaro knew the conditions under which Curro filed his lien, *Page 804 
and agreed to take the property with that defect in title. The contract of June 17 made no reference to it. Corban said that Canizaro agreed to put up $2500 as an earnest money payment. Although Canizaro denied this, the recitation on the check written by him is undisputed documentary evidence that he agreed to that effect. When Corban advised the executor about this additional condition concerning Curro's lien in the check, the executor told him it was not acceptable, and instructed Corban to return the check. Corban did this, and on June 24 he and Canizaro discussed the matter. Corban said that Canizaro told him he had received the check, and that certain financing arrangements of Gulf South had fallen through and "the transaction would have to be called off." Canizaro denied this, but admitted that he had to get financing, and there was a delay in obtaining it. Around August 1 M.M. Brown, executor, reached an agreement to sell the property to another company, at which time he found that Canizaro had added an acknowledgment to the contract of June 17 and recorded it. Brown tried to get Canizaro to execute a release, but he refused.
This was the first time, according to Corban, that he knew Canizaro contended the contract was still in effect. Corban said that he thought the parties had mutually terminated the agreement.
Canizaro testified that, between execution of the contract on June 17 and August 1964, he had no notice that Brown considered the contract rescinded. Yet Brown had returned the check to him, with a statement it was not acceptable. On August 5 Gulf South sent a telegram to Brown stating it was prepared to close the sale, and on August 10 a letter to the same effect.
The contract had interlineated in it the phrase "by court approval." Canizaro said that Brown was to have the contract clarified "or approved" by the Court. When Gulf South entered into this contract, Canizaro signed an agreement to allow Curro to purchase the property. Canizaro asserted that the $2500 check was not part of the agreement, but only an attempt by him to deal in good faith with Corban. He received from Corban a letter of June 23, pointing out that Brown was unwilling to accept Canizaro's amended proposal to purchase, with the additional requirements. He denied telling Corban that his financing had failed, but admitted that he was trying to get some Louisiana people interested in helping to finance the deal. Canizaro said that he had the finances available "from another associate" to close the transaction, but on August 5 he did not have the funds on hand (about $25,000).
Brown, the executor, stated that a $2500 earnest money payment was agreed upon. He rejected the check because of the additional terms and stipulations typed upon it, which changed the original contract. He authorized Corban to sign the original agreement, but no more. So he directed Corban to return the check and send "the whole thing back."
The circuit judge held that the contract was ambiguous, omitting important necessary provisions. He dismissed the suit on the ground that the instrument required court approval, none had been obtained, and thus defendants were not liable. However, we do not consider these questions, since we conclude that Gulf South materially breached its contract, and in effect repudiated it, by tendering earnest money subject to an unacceptable, material condition, and thus the vendor was warranted in rescinding the agreement.
A material breach by the vendee of a bilateral contract to convey land warrants the vendor in rescinding it. Restatement of Contracts § 397 (1932). If the buyer has committed a material breach, or has by repudiation manifested an intention to commit such, the other party should be excused from the obligation to perform further. 6 Williston, Contracts § 864 (3d ed. 1962); Restatement of Contracts § 275 (1932). The materiality of the breach is the decisive factor. Repudiation of a material *Page 805 
part of the contract excuses the other party, although a breach may be material without such repudiation, and if so, should excuse the injured party. 6 Williston, Contracts § 865 (3d ed. 1962). Thus the repudiation of his duty by one of the parties terminates the duty of the other, giving the latter the legal privilege of refusing to render the return performance. The defendants' duty is conditional upon the plaintiff's continued willingness and ability to perform as it agreed. 4 Corbin, Contracts § 975 (1951).
As to the character or kind of breach or default warranting recission, there may be a recission if there is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose. 17 Am.Jur.2d Contracts § 504 (1964). Accordingly, where complainants stated that they would not carry out a contract to manufacture boxes at prices stated in the contract, defendant could not be held liable for damages, since complainants had breached a material part of the contract and in effect repudiated it. Mariani v. Hennington, 229 Miss. 212, 90 So.2d 356 (1956), suggestion of error overruled,229 Miss. 233, 92 So.2d 202 (1957).
In the instant case, Canizaro, acting for Gulf South, agreed to make an earnest money payment of $2500. Appellees' witnesses so testified, and, although Canizaro denied it, the check which he drew the next day payable to the estate expressly designated its proceeds as "good faith deposit on purchase agreement." The contract itself was ambiguous, not stating the gross purchase price and not providing that vendee would assume the first mortgage. Yet the day after its execution, Gulf South gave an earnest money check of $2500, which made performance of the contract dependent on a suitable agreement eliminating the Curro materialmen's lien in the amount of $50,000. This was not a condition in the contract, and had the effect of changing it in a material respect, namely, of conditioning performance upon elimination of the recorded lien. This was a substantial variance from the original agreement.
By this action Gulf South manifested an intention to commit a material breach of the contract. The vendor returned the check to Gulf South, and the latter did nothing further for over a month. In the meantime the executor contracted to sell the property to another. All of these circumstances, we think, constituted a breach of contract by the vendee as to a substantial and material part of the agreement, and a manifestation by it of an intent not to abide by the original understanding. The executor thus was justified in considering the contract rescinded.
Affirmed.
RODGERS, JONES, BRADY and INZER, JJ., concur.