DAN M. LEE, Presiding Justice,
dissenting:
The majority opinion in this case misstates the issue, ignores several key facts in the dispute between Gulf Coast and UHS-Qualicare, and conveniently preempts our long-established scope of review where the trial judge, sitting without a jury, makes findings of fact.
But worst of all, the majority does all this by way of an advisory opinion. We sustained the joint stipulation of dismissal, filed jointly by both parties on petition for rehearing. We today remand to the trial court for ultimate disposition.
In circumstances such as this it is our custom to withdraw the opinion. Cook v. Taylor, 200 Miss. 381, 27 So.2d 404, 407 (1946); Connecticut General Life Insurance Co. v. Lombard, 189 So. 818 (Miss.1939). Furthermore, by virtue of sustaining the stipulation to dismiss, the appeal becomes moot. It goes without saying that this Court will not adjudicate moot questions. Monaghan v. Blue Bell, Inc., 393 So.2d 466, 467 (Miss.1981); Bradley v. State, 355 So.2d 675, 676 (Miss.1978).
Since the majority chooses to ignore our bar against rendering advisory opinions, I trust the bench and bar will give to the majority opinion the weight advisory opinions should have — nothing. More than just our bar against deciding moot questions is at stake, however. The majority opinion compounds this error and rewrites several other doctrines which we normally hold dear. For this reason, I address the merits.
At the outset, I wish to state unequivoca-bly that neither of these litigating parties has my sympathy. Both have acted without much regard for their primary respon *760 sibility of offering first-rate health care at reasonable rates. Be that as it may, the issue before this Court involves parties to a contract and what obligations and rights that contract imposed upon each party.
FACTS
In March of 1980 Safecare Co., Inc., and Qualicare of Louisiana entered into a joint venture agreement whereby each acquired a 50% stock interest in Gulf Coast Community Hospital, Inc., which owned the hospital. Gulf Coast also entered into a 20-year management contract with Qualicare through which Qualicare would manage the hospital in return for a monthly fee based on gross revenues. That contract specifically provided that Gulf Coast reserved the right to make management and policy decisions, specifically the right to set admission policies and fee structures. The management contract also provided that management would prepare an annual budget, but the budget had to be adopted by Gulf Coast Corporation. The contract contained a termination clause where by the agreement could be terminated if management failed to observe or perform any material covenant, agreement, term or provision of the agreement and such default continued for 30 days after written notice of the default. Gulf Coast’s board was composed of three Qualicare representatives and three Safe-care representatives.
In January of 1983 Qualicare sold its interest in Gulf Coast to United Health Services, unbeknownst to Gulf Coast’s other 50% owner, Safecare. UHS formed a subsidiary, UHS-Qualicare, to handle the acquisition. UHS-Qualicare succeeded to ownership of Qualicare’s 50% interest on May 29, 1983, as well as to Qualicare’s management agreement with Gulf Coast. The budget and fee structure for 1983, as adopted by the Gulf Coast board, were in place for that year. The Gulf Coast board continued to be composed of three UHS-Qualicare representatives and three Safe-care representatives.
In June of 1983 UHS-Qualicare, as manager, proceeded to raise the hospital’s daily room rate from $654 to $738, effective June 19, 1983. UHS-Qualicare likewise proceeded to develop a new budget which was completed on June 16, 1983. The rate increase and new budget were implemented without informing Gulf Coast's board and without seeking its approval. It is also significant that UHS-Qualicare immediately changed computer systems such that all hospital information was directed to UHS home offices and could be accessed only by management.
On June 16, 1983, Stephen Jepson, vice president of Safecare Company and Gulf Coast board member, wrote to Alan Miller, president of UHS, demanding that any unilateral rate and budget changes be halted until Safecare could be properly informed. Apparently, Safecare’s attempts to gather information were met with reluctance, if not out and out refusal, by the hospital administration. Significantly, UHS-Quali-care did not present the room rate increase and revised budget to the Gulf Coast board during late June or early July.
On July 12, 1983, the president of Gulf Coast’s board, and president of the original Qualicare, resigned his board presidency. The three Safecare board members elected another Safecare member to the board and the new board ousted the remaining UHS-Qualicare board members. Also on July 12, Gulf Coast’s board terminated the UHS-Qualicare management contract for materially breaching the contract by its actions in raising room rates and revising the budget without board approval, in a written notice to UHS-Qualicare.
Thereafter, UHS-Qualicare, Safecare and Gulf Coast entered into a series of communications and negotiations, apparently trying to settle the dispute and discussing a rate rollback. However, by August 15 the rates had not been rolled back. Gulf Coast’s board wrote to UHS-Quali-care, again outlining UHS-Qualicare’s breach of contract, announcing termination of the management contract, as well as announcing Gulf Coast’s intention of filing a suit “to declare the management agreement terminated.” The letter also stated Gulf Coast’s continued hopes of settling the dispute without resort to legal action.
*761 On August 16, 1983, Gulf Coast commenced a civil action in the Circuit Court of Harrison County, seeking a declaratory judgment that the management contract had been breached and had been effectively terminated. The resort to legal action was obviously prompted by Gulf Coast's desire to keep the day-to-day management of the hospital from being consumed by the potential warfare ensuing between the two underlying corporate interest of Safecare and UHS-Qualicare. Legal action also took the place of the more disruptive option of Gulf Coast’s resorting to self-help, to literally throw UHS-Qualicare out of the management operations of the hospital.
The trial judge, sitting without a jury, found that UHS-Qualicare had materially breached the contract and had not cured the breach after it received notice on July 12. He also found that the termination was effective under the termination clause of the contract since Gulf Coast gave notice both in writing and verbally at least 30 days before it filed suit. The majority, on the original appeal, reversed and rendered, holding that because Gulf Coast had not cured UHS-Qualicare’s breach by not exercising its authority to override the rate increase and revised budget, UHS-Quali-care’s breach was not material. With this holding I disagree.
DISCUSSION
The majority opinion states the issue thus: Where one party to a contract acts with respect to a matter where the other has unqualified authority, has the acting party breached materially? However, such a statement of the issue is backwards. The issue is: Where one party to a contract acts with respect to a matter where, by the terms of the contract, it has no authority to act, has the acting party breached materially? Under the termination clause of the management contract, if UHS-Qualicare, as manager, breached any material covenant, agreement, term of provision of the management provision, Gulf Coast could terminate the contract if the default had not been cured within 30 days after written notice of the breach. The majority finds that the circuit court correctly interpreted this clause to mean that a material breach must have been committed in order to trigger termination. With this interpretation I agree. The majority opinion also agrees with the circuit court that UHS-Qualicare’s actions in setting a higher daily room rate and adopting a revised budget without the knowledge or consent of the board of directors of Gulf Coast constituted a breach. With this I also agree. The next task, then, is to determine whether that breach was “material.” At this point, my agreement with the majority opinion ends.
The majority finds that the circuit court erred when it found that UHS-Qualicare materially breached the management contract and that Gulf Coast’s termination of the contract was valid. It reasons that, because Gulf Coast did not immediately override the rate increase and revise the budget, in other words “cure” UHS-Quali-care’s breach, UHS-Qualicare’s breach was not material. This analysis is likewise backwards.
In the first place, such is not the law. Mississippi has long recognized that a breach must be material before a contract can be terminated, especially where, as here, the termination clause of the contract specifically requires material breach. However, we have never imposed the burden on the non-breaching party to cure the breach. To the contrary, we have followed the general rule that if one contracting party commits a material breach, the other party is excused from further performance. Matheney v. McClain, 248 Miss. 842, 161 So.2d 516, 520 (1964). Most applicable to this case are the words of the Federal District Court for the Southern District of Mississippi:
It is beyond dispute that when a party to a contract knowingly and wilfully fails in his performance, he is indeed occupying an untenable position when he complains that the other party to the contract has injured him by exercising the power of termination.
United States v. Stevens Enterprises, Inc., 183 F.Supp. 411, 413 (S.D.Miss.1960). There is plenty of evidence on the record *762 that UHS-Qualicare knowingly and wilfully acted contrary to its authority expressly stated in the management agreement, as the majority acknowledges. We could even go so far as to say that UHS-Qualicare repudiated its own authority, given by the management agreement, by insisting that it had the greater authority to raise rates and revise the budget and by insisting that Gulf Coast’s board refrain from interfering with its efforts to raise rates and implement a revised budget. “The repudiation of [a] duty by one of the parties terminates the duty of the other, giving the latter the legal privilege of refusing to render the return performance. The defendant’s duty is conditional upon the plaintiffs continued willingness and ability to perform as it agreed.” Gulf South Capital Corporation v. Brown, 183 So.2d 802, 805 (Miss.1966), citing 4 Corbin, Contracts § 975 (1951). [emphasis added] UHS-Qualicare manifested an unwillingness to carry out its duties with the authority granted it by Gulf Coast’s board. Instead, it determined to act with greater authority, defying the board to even interfere. Herein lies the crux of the breach. The law does not further require that the non-breaching party “cure” the breach.
The majority opinion cites as support for its reasoning the principle that “[a] party to a contract cannot take advantage of his own act or omission to escape liability on it.” Dawson’s Dependents v. Delta Western Exploration Company, 245 Miss. 335, 343, 147 So.2d 485, 487-88 (Miss.1963). In that case, a party to a contract failed to perform an act it agreed to do and then tried to hold the other party liable for its own failure to perform. Such principle is not applicable here. Gulf Coast’s inaction in rolling back the rates had nothing to do with UHS-Qualicare’s initial decision to act contrary to the terms of its contract. UHS-Qualicare made that decision and acted accordingly without the knowledge or consent of Gulf Coast. Herein, and herein alone, lies UHS-Qualicare’s breach. ,
The majority opinion also cites Callon Petroleum v. Big Chief Drilling Company, 548 F.2d 1174, 1178 (5th Cir.1977), for the same principle. However, the Callón opinion goes on to explain that one party to a contract could normally not be held responsible for the manner in which the other party chose to perform its obligations under the contract unless it was in a position to know of or had approved of the manner in which the other party chose to perform. Callón at 1179. Such reasoning is applicable to this case. Gulf Coast cannot be held responsible for the way UHS-Qualicare performed, in breach of the contract. The result of the majority opinion does precisely that — it makes Gulf Coast responsible for UHS-Qualicare’s breach. Such is not the law, nor should it be.
The law in Mississippi as to what constitutes a material breach has been stated by this Court:
As to the character or kind of breach warranting recission, there may be a re-cission if there is failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose. 17 Am.Jur.2d Contracts § 504 (1964).
Gulf Coast Capital Corporation v. Brown, 183 So.2d at 803. The requirement that the non-breaching party effect a cure is not a part of the definition.
Related to the concept of material breach is the concept of remedy. While the remedy of recission is drastic, it is peculiarly appropriate to a case of this character. The breach by UHS-Qualicare went to the very heart of the management contract. The purpose of the contract was to provide a vehicle whereby Gulf Coast could rely on its manager to carry out its directives. By knowingly and wilfully acting counter to the board’s directives, UHS-Qualicare subverted the very purpose of the contract and demonstrated its unreliability as a manager. The remedy of damages or specific performance really avails Gulf Coast nothing — neither remedy assures the services it contracted for with UHS-Qualicare. See Light, Heat and Water Company of Jackson v. City of Jackson, 19 So. 771, 774 (Miss.1895). A breach which by its very nature affords no other meaningful remedy is a material breach.
*763 The second problem with the majority’s opinion is that it finds facts which were not before the trial court. By holding that UHS-Qualicare did not materially breach the contract because Gulf Coast did not take the steps to roll back the rates, it assumes that Gulf Coast had the ability to do so. I do not question that it had the authority to do so, but why it did not exercise that authority is another issue. The “whip and reins” of this hospital were given to management to “drive” that horse on a day-to-day basis, in the direction dictated by Gulf Coast. UHS-Qualicare promptly changed computer systems so that all information could be accessed only by management, and then proceeded to “drive the horse” in its own direction. The Board has actually never had the opportunity to “cure” UHS-Qualicare’s breach. The Board had no access to the computer; therefore, Gulf Coast literally could not roll back the rates without management’s consent or cooperation. Hospital information and hospital revenue are channelled directly to UHS-Qualicare’s home office in Philadelphia. Because management refused to cooperate, Gulf Coast went to court to get a determination of their right to terminate based upon UHS-Qualicare’s breach. The lower court ruled there was a material breach and that Gulf Coast had the right to terminate the contract. However, that ruling was appealed with supersedeas; therefore, Gulf Coast as yet has never had control of the hospital so that it could roll back the rate increase and disapprove the budget. Furthermore, the majority opinion in this case gives UHS-Qualicare continued control of the hospital, such that Gulf Coast can never roll back the rates or disapprove the budget without management’s consent or cooperation. First, UHS-Quali-care physically prevented Gulf Coast from “curing” UHS-Qualicare’s breach; second, under the majority opinion we will prevent Gulf Coast from doing so. Management will still have control of the “whip and reins,” while Gulf Coast still cannot effect a roll back. Whether or not Gulf Coast could have “cured” UHS-Qualicare’s breach, and by what means, was not relevant to the issue before the lower court. The only issue before the trial court was: Did UHS-Qualicare materially breach the contract by its actions. This Court cannot now reach out and find that Gulf Coast could have “cured” the breach. To do so flies in the face of the established judicial principle that appellate courts are not finders of fact. Allgood v. Allgood, 473 So.2d 416, 421 (Miss.1985); PMZ Oil Company v. Lucroy, 449 So.2d 201, 205 (Miss.1984); Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983).
More importantly, by reaching out and making this finding, the majority alters basic contract law by holding Gulf Coast responsible for UHS-Qualicare’s breach. As pointed out earlier, this is not the law, nor should it be. Even if this Court wished to pursue its course of altering contract law, which I am not proposing we do, the appropriate course would be to remand the case for litigation of the “curability” of the breach. Absent the necessity or the desirability of altering contract law, the circuit court’s ruling should be affirmed.
The final problem with the majority’s opinion lies in its circumvention of our well-known scope of review. As the majority opinion states, we will not disturb a trial judge’s findings of fact where there is in the record substantial evidence supporting the same, whether these findings relate to matters of evidentiary fact or ultimate fact. Norris v. Norris, 498 So.2d 809, 814 (Miss.1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss.1985); Cotton v. McConnell, 435 So. 2d 683, 685 (Miss.1983); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss.1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978). These limitations do not apply, however, when we review questions of law. Boggs v. Eaton, 379 So.2d 520, 522 (Miss.1980). The majority opinion then determines that the circuit court erred as a matter of law in its reading of the contract because it found that UHS-Qualicare, not Gulf Coast, had the sole authority to cure its breach. Horsefeathers. The circuit court made no such finding. The circuit court found that UHS-Qualicare breached the contract when it made “a substantial increase without consent of the hospital. The implementation of a new budget with *764 out board approval was in aid of the rate increase. These two matters ... are substantial and material breaches and have not been cured” by UHS-Qualicare, which had the obligation under the contract to cure any breaches it committed. It did not do so, which left Gulf Coast the option of terminating the contract. Materiality of a breach is a question of fact. Hensley v. E.R. Carpenter Company, 633 F.2d 1106, 1110 (5th Cir.1980). The circuit court found that UHS-Qualicare’s actions were a material breach and they did not cure the breach. This Court may not put words into the trial judge’s findings that are not there. Neither may it turn a finding of fact into a question of law in order to circumvent our scope of review. There is substantial evidence on the record to support the circuit court’s findings of fact such that we may not now say that his findings were clearly erroneous.
In summary, were we to reach the merits of this case, I would grant the Petition for Rehearing and affirm the trial court. However, in addition to granting the motion to dismiss, I would have gone further and withdrawn the opinion, as it certainly has no precedential value, Cook, supra, and serves only to mislead the bench and bar; furthermore, it is in derogation of our rule against rendering advisory opinions or opinions on moot questions.
HAWKINS, P.J., joins this dissent.
GRIFFIN, J., not participating.