CHANDLER, J.,
dissenting:
¶ 14. I respectfully dissent. While Ruth’s health problems and job loss may have influenced the chancery court’s decision, in my opinion the chancery court’s application of the prenuptial agreement was reversible error. I leave unaddressed the question of whether Mississippi law *152 applies to this issue; in the prenuptial agreement the parties expressly selected the law of Missouri to govern “the validity and construction” of the agreement, and the contract law of Missouri may conflict with that of this state.
¶ 15. My review of the record indicates that the chancery court essentially rewrote, rather than enforced, the prenuptial agreement by selectively enforcing its provisions. Assuming the agreement was enforced on its face and in its entirety, Ruth was to have paid $781 per month in mortgage payments for the duration of the loan period. The record demonstrates that she made payments for only thirteen months, and that James made payments • for at least eleven months. The chancery court ordered that James be reimbursed for his payments in the amount of $8,591 after discharge of the mortgage balance and sale fees, but before the $25,000 was paid to Ruth. The chancellor did not reduce Ruth’s $25,000 by the mortgage payments she failed to make but was contractually obligated to pay. Because the order reimbursed James from the net proceeds that should have been divided equally between the parties, the effect of the order was that James contributed half of the monthly payments during the eleven months Ruth failed to so. Thus, the chancellor’s order did not place Ruth in the same position she would have been in had she paid the $8,591 in mortgage payments. Therefore, the court’s order only partially enforced the prenuptial agreement. Under our law, there is no support for the proposition that, when a chancery court construes a contract, the court may enforce some mutual promises, while declining to enforce other mutual promises. “It is not now and never has been the function of this Court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated.” Estate of Hensley v. Estate of Hensley, 524 So.2d 325, 328 (Miss.1988).
¶ 16. Further, I cannot agree with the majority that the prenuptial contract was so indefinite as to preclude a finding that a material breach occurred when Ruth failed to make the mortgage payments. As a basic premise of contract law, “it is a condition of each party’s remaining duties to render performances to be exchanged under and exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.” RESTATEMENT (SECOND) OF CONTRACTS § 237 (1981). A material breach is defined as “a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose.” Gulf South Capital Corp. v. Brown, 183 So.2d 802, 805 (Miss.1966). The terms of the agreement plainly show that Ruth’s failure to perform substantially defeated the purpose of the agreement, which in large part was a financial arrangement for the purchase of the marital home. Under the agreement as enforced by the chancellor, Ruth derived the benefit of the $25,000, but James did not receive the benefit of Ruth’s payment of half of eleven months’ worth of mortgage payments. Whatever the parties’ purpose in entering into the agreement may have been, logically that purpose could not have been that Ruth would benefit to a greater degree by breaching the agreement than she would have benefitted under the letter of the agreement.
¶ 17. I would reverse and remand for the chancery court to divide the marital property without application of the prenuptial agreement, and offsetting any proceeds due Ruth with $16,000 to properly *153 compensate James for the furniture which was taken from him.
BRIDGES, J., JOINS THIS SEPARATE WRITTEN OPINION.