MATHENEY, et al. *v.* McCLAIN, et al.

No. 42926 March 9, 1964 161 So. 2d 516

*Wayne L. Nix,* Jackson; *Robert L. Calhoun,* Hattiesburg, for appellants.

*Simrall, Aultman & Pope,* Hattiesburg, for appellees.

RODGERS, J.

The appellants, Cecil B. Matheney and Franklin B. Arnold, filed a bill of complaint in the Chancery Court of Forrest County, Mississippi, seeking to enjoin the appellees, John McClain and C. W. Hicks, from conducting an appraisal business, and asking a judgment for damages. The relief sought is based upon the alleged violation of two contracts, one of which was signed by each of the appellees and appellants. They are identical except for names and dates. The contract signed by John M. McClain is dated June 1, 1961, and the one signed by C. W. Hicks is dated June 4, 1962.

Appellees answered the bill and admitted the validity of the contract, and also admitted that they were operating an appraisal business, but denied they had violated the agreement contained in the contract, because, it is asserted, the appellants themselves violated the

contract by changing the pay plan set out in the contract, without the written agreement of appellees. Further, it is alleged the appellants refused to do equity and could not therefore maintain an action for injunctive relief. Appellants responded to the affirmative allegation in the answer, saying that they did not breach the contract, and pleading in the alternative, that appellees had waived any breach of which appellants might have been guilty.

The chancellor held the testimony and at the conclusion of the evidence entered a decree finding as a fact that the appellants breached the contract. He dismissed the bill and released appellees. We are of the opinion that the chancellor was correct in dismissing the original bill under the facts.

## I

The contract signed by the parties contains the following pertinent clauses:

"The party of the second part agrees to devote his full time and talents to the operations of said business in the area as agreed on by both parties and will furnish his own transportation and transportation expenses, and all his own personal expenses except where he is called into the central office for a meeting or such other special occasion as shall be agreed on.

"Due to a highly skilled nature of this work, the party of the second part is of necessity bound to produce his work without close supervision, and will be responsible for his work to the point that all work done will have to come up to the satisfactory level, meeting approval of the party of the first part and the assigning agent or agency. * * *

"The party of the second part further agrees that should his employment with the party of the first part be terminated for any reason, that he will not take part in the operation of any other business of the same nature and character, as principal, agent, manager, or other-

wise, within a radius of 200 miles of Jackson, Mississippi, or 100 miles of any branch office of party of the first part for a period of at least two years from the date of the termination of his employment, and he further agrees that should he violate this agreement that he shall be held liable to the party of the first part in the sum of One Hundred Twenty-Five and No/100 Dollars ($125.00) per week as long as such violation continues.

"The contract between the party of the first part and the party of the second part may be terminated by either party at any time by giving the other party two weeks notice in writing."

It is said that there is attached to the contract the document provided for in Paragraph 5, likewise signed by all of the parties. This document is entitled: Compensation Agreement." It provides: (1) A salary of $125 per week; (2) a quota of $800 gross in fees, and mileage charges, to be submitted before receiving an additional compensation; and (3) that appellee would receive fifty percent of all additional fees in excess of $800, quota, such amount to be paid as soon after the first of the following month as was possible.

The testimony shows that in July 1962 appellants held a meeting with their employees, including the appellees, at which time appellants proposed several plans, whereby the employees' pay would be reduced. Appellants claimed there was an understanding that the pay of the employees would be reduced, at this time. The chancellor held that there was no agreement to change the contract, and we are of the opinion he was correct in so doing. There was certainly no written change in the contract. Later, on September 4, 1962, appellant Matheney sent out a memorandum reducing fees of the appellees to one-third of the amount between $800 and $1,100. This reduction in salary was made retroactive to August 1, 1962. The appellants did

not thereafter offer to comply with the pay scale, outlined in the written contract. The appellees objected to the change of the contract so as to reduce their pay set out in the memorandum. One of the appellees came to Jackson and advised the appellant that he could not work at a reduced pay wage, and the other returned his bonus check, but both accepted the reduced pay checks for the months of September and October. They claimed, however, that such checks were accepted after having fully advised appellants they could not live on such reduced pay.

Appellees went to the office of appellants and advised their secretary that they were quitting. The following Saturday, appellants went to Hattiesburg and had a conversation with appellees, where, it is said by appellants, that there was a mutual understanding that John McClain would work on for a reasonable time until they could get someone to take his place, and that he did work until November 16, 1962, as a result of this understanding. Appellants based their claim for injunctive relief on the fact that appellees gave no written notice to them.

██ █ Inasmuch as the chancellor decided from the facts (which we believe to be overwhelming) that appellants breached the contract by reducing the pay scale agreed to in the contract — the issue finally becomes a question as to whether or not appellees waived the breaching of the contract — so that they were bound to give notice of their resignation in writing, and were bound by the contract not to engage in the appraisal business within two hundred miles of Jackson, Mississippi.

II

We are not troubled in the instant case with the problem presented in Floyd D. Bagwell, v. H. B. Wellborn & Co., Inc., 247 Miss. 564, 156 So. 2d 739, because, if the appellees in this case waived the breach of the

contract as to the change in the pay scale, they are bound under the Bagwell case by their contracts, and cannot now engage in the business of appraisal.

It is the contention of appellants that appellees accepted their checks in payment for their work, and under the substitute pay plan after September 4th they continued to do their work under the contract, therefore, it is argued, appellees waived their right to rescind the contract because of the failure of appellant to pay appellees in compliance with the terms of the contract.

 It is said as a general rule that ''Strict and full performance of a contract by one party may be waived by the other party.'' 12 Am. Jur., Contracts, §353, at p. 919. Again it is said: ''A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect waives his right to rescind.'' 12 Am. Jur., Contracts, §449, at p. 1031. See also 17 C. J. S., Contracts, §§443, 447, pp. 926, 928; 17A C.J.S., Contracts, §443, p. 555, §447 p. 558, §474, p. 670. This Court has uniformly followed the foregoing rule, as will be seen from the authorities cited in Gannaway v. Toler, 122 Miss. 111, 84 So. 129; Moore v. Yazoo & M. V. R. Co., 176 Miss. 65, 166 So. 395; Tower Underwriters, Inc. v. Culley, 211 Miss. 788, 53 So. 2d 94.

We have not found any decisions from this Court precisely determining the question here involved, but at least one state has heretofore passed upon this issue. In the case of Smith Baking Company v. Behrens, 125 Neb. 718, 251 N. W. 826 (1933), the employer sought to enjoin an employee under an employment contract in which the employee had agreed not to engage in a competitive business. The employer reduced the wages of the employee without his consent and the employee continued to work for three months after his wages had been reduced. The court held that there was no implied

contract because employee continued to work, and since employer breached the contract, he was not entitled to injunctive relief to enforce the restrictive covenant of the contract.

### III

As a general rule, a party to a contract may break it, by renouncing his liabilities under it; by rendering performance of his promise impossible; or by totally partially failing to perform his agreement or undertaking. When either party to a contract fails to perform any of his terms, the contract has been broken. See McGraw v. P. Pulling, Freeman's Chancery Reports 357. Moreover, if the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract, such a breach will discharge the other party from the performance of his promise. McGraw v. Pulling, supra; Leek Milling Company v. Langford, 81 Miss. 728, 33 So. 492; 17A C. J. S., Contracts, §474, p. 670.

Applying the foregoing rule to the facts in this case, the evidence shows that appellants failed to perform their agreement to pay appellees as set out in the contract. The terms of the contract were therefore broken. Payment in the manner agreed upon is a vital part of the contract, and a failure to perform this essential is such a breach as to discharge appellees from performing their part of their separate contracts. The appellees were therefore released from performing their agreement in the contract unless it can be said that they waived the breach of the contract previously made by appellants.

Testimony for both sides in this case shows that appellees continually protested the reduction of their pay. Appellees did not agree to a pay reduction, and they advised appellants that they could not live on the reduced pay. We cannot therefore under the facts

in this case hold that appellees waived the breach of the contract by accepting two checks under the reduced pay plan, because appellants owed appellees the amount paid them under the terms of the written contract, and the mere fact that appellants did not pay all due to appellees cannot be considered a waiver of their right to elect to renounce the contract, or to continue to perform their part of the contract and sue for their pay as set out therein. Appellees elected to renounce the contract and to seek other work in an effort to make a living. We are of the opinion that they were within their legal right to so do.

We do not deem it necessary to discuss the other issues raised by the brief of appellees since we hold that the decree of the chancery court is correct and should be affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Gillespie and Patterson, JJ.,* concur.