James D. HENSLEY, Plaintiff–Appellant,

v.

E. R. CARPENTER CO., INC.,
Defendant–Appellee.

No. 80–3446
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Nov. 25, 1980.

Michael G. Soper, Tupelo, Miss., for plaintiff–appellant.

Lumpkin, Holland, Ray & Upchurch, James Hugh Ray, W. Reed Hillen, Tupelo, Miss., for defendant–appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

GEE, Circuit Judge:

James D. Hensley appeals from both a summary judgment against him in a breach of contract suit he brought against his employer and an injunction entered against him upon a counterclaim by the employer that requires him to abide by a restrictive covenant in the contract.

In September 1978, Hensley's employer, E. R. Carpenter Company, a manufacturer and processor of urethane foam, promoted Hensley to division manager of the company's Tupelo (Mississippi) Division Profit Center. In December of the same year, Hensley signed an employment contract with the company that contained the following clause: "2. *Duties.* The Employee is employed to manage the Tupelo division profit center. The precise services of the Employee may be extended or curtailed from time to time, at the direction of the Company." The contract also contained a covenant that Hensley would not work for a competitor of Carpenter anywhere in the continental United States or Canada for at least two years after leaving the company.[1]

In November 1979, the company removed Hensley as division manager and placed him in the newly created position of sales manager, which involved supervising a staff of two employees, later reduced to one. Hensley's salary was not diminished, but he received neither a cost–of–living increase that was accorded all of Carpenter's other Tupelo employees nor a customary year–end bonus. The company also assigned Hensley to

---

1. The full text of the covenant not to compete was as follows:

7. *Restrictive Covenant.* Upon the termination of the Term of Employment the Employee shall not without the prior written consent of the Company, directly or indirectly, within the Restricted Territory (hereinafter defined), in competition with the Company, enter into or engage in the business of manufacturing, jobbing, selling or marketing urethane foam or polyester fiber battings or any branch thereof, either as an individual for his own account, or as a partner or joint venturer, or as an employee, agent, or salesman for any person, or as an officer, director or shareholder (except ownership of publicly traded shares, so long as such ownership is less than 1%), or otherwise, for a period of two years following the termination of the Term of Employment. Solicitation or acceptance of orders outside the Restricted Territory for shipment to, or delivery in, the Restricted Territory shall constitute "engaging in business" in the Restricted Territory in violation of this agreement. As used herein, "Restricted Territory" means the following geographical area: The Continental United States and Canada.

It is recognized that a broad geographical area is being described, however, both parties hereto recognize that the Company does business throughout such area, and the Employee has been responsible for operations throughout such area, and such a broad area is necessary for the protection of the Company. This covenant on the part of the Employee shall be construed as an agreement independent of any other provision of this agreement; and the existence of any claim or cause of action of the Employee against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant.

In the event of a breach or threatened breach of the Employee of the provisions of this Section 7, the Company shall be entitled to an injunction restraining the Employee from violating the provisions of this Section 7. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to the Company, including the recovery of damages, for a breach or threatened breach of this Section 7.

an office that lacked both a desk and a desk chair.

Since Hensley regarded Carpenter's treatment of him to have breached his employment contract, he left the company and, in January 1980, accepted employment as general manager of Superior Products Company, a Tupelo–based competitor of Carpenter. The next month he brought this diversity suit against Carpenter for damages attendant to the breach of contract and for a declaration that he was no longer bound by the contract and its restrictive covenant because Carpenter's breach warranted rescission of the contract and because the contract in general and the covenant in particular were unconscionable. Hensley formally requested a jury trial. Carpenter counterclaimed for an injunction enforcing the covenant and thus barring Hensley from continued employment with Superior Products.

The district court first held a hearing on Carpenter's equitable counterclaim and entered a preliminary injunction forbidding Hensley to work for a competitor of Carpenter within a 300–mile radius of Tupelo for the two–year period prescribed in the restrictive covenant. The court decided that Carpenter had not breached its contract with Hensley by removing him as division manager because it had not reduced his salary, because it had not asked him to resign, and because the second sentence in the duties clause of the contract, quoted above, authorized the company to treat Hensley as it did. The court also

found that the covenant not to compete was not unconscionable (and therefore unenforceable) except with regard to its geographic scope–the continental United States and Canada–which the court found to be unreasonable as applied to Hensley. The court decided, however, that a reasonable scope for the covenant would be the trade area served by the Tupelo Division, which encompassed a 300–mile. radius of the City of Tupelo, and, with the geographic scope of the covenant thus modified, the court issued the preliminary injunction enforcing the covenant against Hensley. Shortly thereafter, the court granted Carpenter's motion for summary judgment on the merits of Hensley's claims and made the preliminary injunction permanent.

Hensley appeals the district court's finding that Carpenter did not breach its contract with him and thus the court's conclusion that Carpenter was entitled to summary judgment and enforcement of the restrictive covenant. Hensley also appeals the court's specification of a reasonable geographic scope for the covenant insofar as it extends beyond the boundaries of the State of Mississippi. Although we previously denied Hensley's motion for suspension of the district court's injunction pending our disposition of this appeal, we did order that the appeal be expedited.

We agree with Hensley that the district court erred in finding that Carpenter did not breach the employment contract when it demoted him [2] and that the court

---

2. Hensley also contends that Carpenter breached his contract by reneging on an oral promise to pay him a bonus as it had in the past. The evidence that Hensley adduced to establish the promise was the following account of a discussion he had had with one of his superiors at Carpenter: "We were talking about–in the early part of the year, about holding expenses down, holding raises down, and we were establishing the cost of living raise for the year for our hourly people, and he said that Mr. Pauley had said that the people who had received bonuses for the previous years should not count on any more bonus for the next year than they had received in the preceding years." While we question whether this evidence alone would sustain a finding of the promise Hensley alleges--a finding the district court did not

make -we conclude that, at least on the present record, Hensley could not prevail on his contention even if the promise had been made because, under Mississippi law, an oral modification of a written contract must be supported by additional consideration, *Stahlman v. National Lead Co.,* 318 F.2d 388, 394 (5th Cir. 1963); *Sacred Heart Southern Missions, Inc. v. Terminix International, Inc.,* 479 F.Supp. 348, 351 (N.D.Miss.1979); *Pritchard v. Hall,* 175 Miss. 588, 167 So. 629 (1936), and Hensley has not, to our knowledge, alleged additional consideration.

On another front, Hensley seems to argue that the totality of Carpenter's behavior toward him, including the demotion, the denial of a bonus and cost–of–living raise, and his reas-

erred, because of its reliance on that finding, in granting summary judgment for Carpenter on Hensley's breach of contract claim and in enforcing the restrictive covenant. Since this is a diversity case, the substantive issues herein are of course governed by state law. In *Matheney v. McClain*, 248 Miss. 842, 161 So.2d 516 (1964), the Supreme Court of Mississippi, considering a claim by an employee that he was not bound by a covenant not to compete contained in his contract because his employer had breached the contract, held that "if the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract, such a breach will discharge the other party from the performance of his promise." *Id.* at 849, 161 So.2d at 520 (citations omitted); *see Olin Corp. v. Central Industries, Inc.*, 576 F.2d 642, 646–47 (5th Cir. 1978). Although the Mississippi courts have not to our knowledge specifically decided whether an unjustified reduction in rank conferred by an employment contract can constitute a breach of that contract, the weight of authority in other jurisdictions is that it can. 53 Am.Jur.2d *Master and Servant* § 44 (1970); Annot., 63 A.L.R.3d 539 (1975). Absent evidence to the contrary, we presume that the Mississippi courts

would adopt the prevailing rule if called upon to do so. *United States v. Southeast Mississippi Livestock Farmers Association*, 619 F.2d 435, 437, 439 (5th Cir. 1980). The Supreme Court of Mississippi has held, moreover, albeit some time ago, that an employment contract that gave an employee exclusive supervisory control over other employees was breached and the employee wrongfully discharged when the employer transferred supervision of some of those employees to another. *Estes v. Jones*, 119 Miss. 142, 80 So. 526 (1919).

Although normally a question of fact, 53 Am.Jur.2d *Master and Servant* § 44 (1970); Annot., 63 A.L.R.3d 539, 543–44 (1975), we have no trouble concluding as a matter of law, *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969), that Carpenter's demotion of Hensley from division manager to sales manager, unless justified, violated the first sentence of the duties clause of Hensley's contract. Since the district court made no finding that the demotion was justified,[3] the court's summary judgment for Carpenter on Hensley's breach of contract claim is reversed.

■■■ Even if Carpenter did breach Hensley's contract, however, Hensley is entitled to rescission and thus avoidance of the restrictive covenant only if the breach

signment to an unfurnished office, amounted to a constructive discharge. We note, however, that, under the contract, Hensley was subject to discharge with or without cause upon two weeks' notice or the payment of a half month's salary. The constructive discharge allegation appears to be tenable, therefore, only insofar as Hensley seeks severance pay as part of his damage claim. In its opinion granting the preliminary injunction, the district court stated that Hensley "voluntarily terminated his employment with Carpenter," but for several reasons we do not regard this language as dispositive of the allegation. First, the court did not specifically address the constructive discharge issue, and thus we cannot be sure that the court meant to decide it. Second, the court's language could signify only that Hensley was not actually discharged, not that he was not constructively discharged. And finally, whether an employee has been discharged is generally a question of fact for the jury in a breach of contract suit, 53 Am.Jur.2d *Master and Servant* § 70 (1970); 56 C.J.S. *Master and Servant* § 54(b) (1948), rather than one for a court

sitting, as here, as a court of equity. *See* note 5, *infra*.

3. It appears to be generally agreed that a reduction in rank in contravention of a contract provision does not constitute a breach of the contract if the demotion is justified., 53 Am. Jur.2d *Master and Servant* § 44 (1970); Annot., 63 A.L.R.3d 539 (1975), and Hensley concedes this proposition in his brief on appeal. Carpenter contends that it demoted Hensley because the Tupelo Division produced disappointing profit results during his tenure as manager. The district court, however, made no findings regarding how Hensley performed as manager and whether his performance would warrant removing him from the job.

The parties may wish to pursue the justification issue further on remand. If they do, we note that all questions of fact related thereto must be resolved by the jury Hensley has demanded insofar as they bear upon his claim for either damages or rescission. *See* note 5, *infra*.

was "vital," *i.e.,* "material." *Matheney v. McClain, supra; Gulf South Capital Corp. v. Brown,* 183 So.2d 802, 804–805 (Miss.1966). Materiality of a breach is ordinarily a question of fact. J. Calamari & J. Perillo, *The Law of Contracts* 409 (1977); 17A C.J.S. *Contracts* § 630(a) (1963); *see E. T. Burrowes Co. v. Crittenden,* 37 So. 504 (Miss. 1904). Since, under the second sentence of the duties clause, Carpenter was authorized to extend or curtail the services Hensley could be called upon to render, we regard the materiality of Carpenter's change in Hensley's status to be an open question [4] that should be resolved by the trier of fact on remand.[5] Since a finding with regard to materiality has not yet been made and Carpenter is not entitled to invoke the cove-

nant if its breach was material,[6] the injunction entered by the district court must be vacated.

The court did not err, however, as Hensley contends, in reforming the scope of the covenant to cover the area within a 300–mile radius of Tupelo. Under Mississippi law, when the territorial scope of a covenant not to compete is unreasonable, the covenant may nevertheless be enforced within an area that is reasonable. *Redd Pest Control Co. v. Heatherly,* 248 Miss. 34, 157 So.2d 133 (1963); *accord, Hill v. Central West Public Service Co.,* 37 F.2d 451 (5th Cir. 1930) (pre–*Erie* case). The reasonableness of a contractual restraint on competition is a question of law to be decided by

---

4. The contract provision that permitted Carpenter to terminate Hensley without cause upon giving him sufficient notice or severance pay, *see* note 2, *supra,* is also relevant to the materiality question.

5. Hensley requested a jury trial when he first filed his suit. Even in a diversity case, the allocation of decision–making between a court and a jury is governed by federal law. *Owens v. International Paper Co.,* 528 F.2d 606, 611 (5th Cir. 1976); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2303 (1971). Under federal law, the right to have a jury determine issues of fact turns essentially on whether the claim to which those issues relate is legal or equitable. *Id.* § 2302. The court below held a hearing in order to decide Carpenter's counterclaim for specific performance, an equitable action, and thus decided all issues of fact itself. It is well established, however, that if a party asserts a legal claim, he is entitled to a jury determination of the factual issues related to that claim even if those issues also relate to equitable claims brought by that party or equitable counterclaims brought by the opposing party. *Id.* §§ 2302, 2305–06; *Bowles v. Bennett,* 629 F.2d 1092 (5th Cir. 1980); *Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1107 (5th Cir. 1972) ("where certain fact issues are common to both the legal and equitable claims in a lawsuit, only under the *most imperative circumstances* should a judge proceed first with the equitable claims in such a fashion that he, rather than the jury the parties have demanded, decide [sic] those fact issues" (emphasis in original) (citations omitted)). Thus, Hensley must be afforded a jury as the trier of fact for his legal claims.

While Hensley's claim for damages is clearly a legal one, the characterization of his rescission claim is more problematic. To the extent that he is asking the court to rescind the con-

tract and to declare it avoided, the relief he seeks is equitable, while to the extent that he is asking the court to recognize the propriety of his own rescission of the contract and to restore to him the rights he gave up when he signed the contract, his claim is legal. *See* D. Dobbs, *Handbook on the Law of Remedies* 254·55, 292–94 (1973). We need not decide which characterization is the more appropriate, however, because in a case involving sufficiently similar facts, *Olin Corp. v. Central Industries, Inc.,* 576 F.2d 642 (5th Cir. 1978), this court decided that issues surrounding a rescission claim should go to a jury. Thus, we conclude that Hensley is entitled to a jury determination of issues of fact related to his claims for both damages and rescission, unless, of course, a directed verdict would be appropriate under *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969).

6. We note, however, that under the terms of the contract,

> [t]his covenant on the part of the Employee shall be construed as an agreement independent of any other provision of this agreement; and the existence of any claim or cause of action of the Employee against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant.

*See* note 1, *supra.* If this provision is effective, Hensley is bound by the covenant notwithstanding the materiality of Carpenter's breach. However, since the parties did not address the effect of this provision in their briefs and the district court did not do so in its opinion, we will not consider the question further here but will leave the parties free to pursue it on remand.

the court. *Palmer v. Chamberlin*, 191 F.2d 532, 539–40 (5th Cir. 1951); *see Redd Pest Control Co. v. Heatherly, supra.* Given the deference we typically accord to district courts' decisions regarding the law of the states in which they sit, *Smith v. Amerada Hess Corp.*, 612 F.2d 212, 214 (5th Cir. 1980); *Kaufman & Broad Home Systems, Inc. v. International Brotherhood of Firemen & Oilers*, 607 F.2d 1104, 1108 (5th Cir. 1979), we cannot quarrel with the court's conclusion that the region it designated was a reasonable one under Mississippi law within which to enforce the covenant. Hensley does not dispute the evidence that the market area served by the Tupelo Division extends to approximately a 300–mile radius of the city, and Mississippi case law amply supports the use of such an area as an appropriate locus for enforcement of a restrictive covenant. *See Redd Pest Control, supra; Donahoe v. Tatum*, 242 Miss. 253, 134 So.2d 442 (1961).

Nevertheless, for the reasons previously set forth, the decision of the district court is REVERSED, and the case is REMANDED to it.