**William Geary FORD,
Plaintiff–Counter–Defendant,
Appellant,**

v.

**CITIZENS AND SOUTHERN NATIONAL BANK, CARTERSVILLE, John Coleman, Stanley D. Tilley, David P. Soulis, Defendants–Counter–Claimants, Appellees.**

No. 90–8667.

United States Court of Appeals, Eleventh Circuit.

April 18, 1991.

See also 700 F.Supp. 1121.

Bruce Harvey and Mark V. Spix, Spix, Krupp & Reece, P.C., Atlanta, Ga., for plaintiff-counter-defendant, appellant.

Mark J. Kadish, Atlanta, Ga., for Stanley D. Tilley and David P. Soulis.

Ben F. Johnson, III, Alston & Bird, Atlanta, Ga., for other defendants-counter-claimants, appellees.

Before JOHNSON and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

JOHNSON, Circuit Judge:

William Geary Ford appeals the district court's order enforcing a settlement agreement which ended litigation between Ford as plaintiff and Citizens and Southern National Bank of Cartersville, Georgia (C & S), John Coleman, Stanley Tilley, and David Soulis as defendants.

## I. BACKGROUND OF THE CASE

During the summer of 1988, the escrow account of the law firm of Tilley & Soulis, where Geary Ford's wife Vickie Ford worked as the office manager and book-keeper, allegedly went into overdraft in the amount of approximately $320,000. Because Vickie Ford had single signature authority on the account, she was liable to C

& S for the overdraft along with attorneys Tilley and Soulis. In August 1988, Geary Ford executed security deeds on his farm and rental property for the purpose of securing Vickie Ford's indebtedness to C & S. In October 1988, however, Geary Ford filed suit in federal district court against C & S, its president John Coleman, and attorneys Tilley and Soulis, alleging that he had been forced to sign the deeds under duress and that the defendants had violated various federal consumer credit protection acts and committed fraud. He sought damages as well as rescission of the security deeds.

In the spring of 1989, the parties began settlement negotiations. Primarily involved in these settlement discussions were Ford's attorney Harvey Harkness and the counsel for C & S. Also participating at times were Ford, his wife, and his wife's counsel, though Vickie Ford was not a party to the lawsuit. Late in September 1989, the parties began to reach settlement on certain terms and conditions. On October 17, 1989, C & S sent attorney Harkness a proposed memorandum of settlement. Attorney Harkness believed the written agreement to reflect accurately the agreed-upon settlement which was on the table at that moment with the exception of one term. This exception, according to Harkness, was that Ford wanted "a letter or some other kind of document that would go from C & S Bank to Mr. Ford to enable him to take his line of credit to another lending institution and try to ease his credit problems, which is not referenced in this memorandum." The parties all agreed that the term regarding the letter was in fact intended to be part of the settlement and orally added it to the agreement. With the addition of this term, attorney Harkness agreed to the settlement memorandum on behalf of his client Ford.

A few months later, Ford indicated to C & S's counsel that the settlement memorandum did not reflect his understanding of the terms he felt had been arrived upon in September and that he did not intend to abide by it. C & S then filed an action in March 1990 to enforce the agreement. The district court held an evidentiary hearing. In June 1990, the court entered an order

enforcing the October 17 settlement memorandum. Ford appeals the district court's grant of this enforcement order.

## II. ANALYSIS

■ Georgia law governs both the construction of the settlement agreement and the attorney's authority to enter into that agreement on behalf of his client. *Blum v. Morgan Guar. Trust Co.*, 709 F.2d 1463, 1467 (11th Cir.1983) (construction of agreement); *Glazer v. J.C. Bradford & Co.*, 616 F.2d 167, 168 (5th Cir.1980) (attorney's authority).

Under Georgia law, "an attorney is cloaked with apparent authority to enter into a binding agreement on behalf of a client." *Glazer*, 616 F.2d at 168. The client is therefore "bound by his attorney's agreement to settle a lawsuit, even though the attorney may not have had express authority to settle, if the opposing party was unaware of any limitation on the attorney's apparent authority." *Id.* Ford expressly states that he does not contest that attorney Harkness had authority to settle on his behalf.

■ Rather, the thrust of Ford's argument is that the parties never reached a settlement because they never had a "meeting of the minds" in regard to the essential terms of the agreement. A meeting of the minds is a prerequisite to the formation of settlement agreements under Georgia law. *See Blum*, 709 F.2d at 1467. Ford asserts that the parties actually reached an agreement in September and the October written agreement was merely intended to memorialize that earlier oral agreement. In Ford's view, the earlier oral agreement included a term requiring C & S to cancel the security deed on the rental property, but the October 17 written agreement did not. Ford thus argues that though there may have been a meeting of the minds in September, the October 17 memorandum did not reflect that understanding.

Attorney Harkness, however, testified that the October 17 memorandum was the final settlement agreed to by counsel for

the parties. Harkness stated that the agreement was "thrashed out over a protracted period of time" and that the final settlement "evolved through several months and kept changing like spaghetti." In reference to the written agreement, Harkness stated that he and the opposing counsel "had a meeting of the minds as far as this settlement." Consequently, even if Ford is correct in stating that in a prior discussion the settlement included a term cancelling the security deeds, he still has not challenged the fact that attorney Harkness clearly agreed to the October 17 memorandum which did not contain the term. Because under Georgia law an attorney's consent to settlement is binding on the client unless the other parties were aware that the attorney's authority was limited, *see, e.g., Glazer,* 616 F.2d at 168, the October 17 memorandum binds Ford.

■ Ford secondarily asserts that the October 17 agreement does not reflect a meeting of the minds because it does not include his wife. Vickie Ford's counsel testified that he had understood that the settlement would include Vickie Ford and would address her indebtedness and her use of Ford's rental property. This argument is meritless. Because the wife was not a party to the lawsuit, she is not a necessary party to the settlement.

■ Ford also argues that he had asked to review certain records belonging to C & S and attorneys Tilley and Soulis. C & S allowed him to review its records; Tilley and Soulis did not. Ford contends that the reviewing of these records was a condition precedent to any settlement. Ford, however, did not make this requirement known to the parties as a limitation on his attorney's authority to consent to a settlement on his behalf. Under *Glazer,* the client is still bound by the attorney's consent to the settlement "if the opposing party was unaware of any limitation on the attorney's apparent authority." *Glazer,* 616 F.2d at 168.

■ Finally, as a fallback position, Ford argues that because there was a factual dispute as to whether there was a meeting of the minds on the settlement agreement, a jury trial was required. He bases this argument on *Devereaux v. Citizens & Southern Nat'l Bank,* 172 Ga.App. 53, 322 S.E.2d 310 (1984). In *Devereaux,* the plaintiff's attorney orally offered to settle the underlying suit and later mailed a letter to the defendants confirming the offer. The defendants accepted the offer in writing two days later. The plaintiff's attorney claimed, however, that before the acceptance he had informed the defendants' attorney that his client had withdrawn his authority to settle. The trial court treated the issue as a non-jury matter and ruled that the plaintiff's attorney had authority to settle. The Georgia Court of Appeals reversed, ruling that the trial court erred in enforcing the settlement agreement because the factual question was one to be resolved by a jury. *Id.* at 310. Ford thus argues that where there is a factual question regarding a settlement agreement, Georgia law requires a jury trial under *Devereaux.*

Even though the "substantive dimension" of a claim brought in federal court may be governed by state law, "the right to a jury trial in federal courts is to be determined as a matter of federal law." *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam); *see also Owens v. International Paper Co.,* 528 F.2d 606, 611 (5th Cir.1976) (rejecting "attempts to apply state procedural rules to the judge-jury relationship"). The holding of *Devereaux* is therefore inapposite because this procedural issue must be addressed by federal law.

■ Under federal law, a district court has "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." *Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33, 36 (5th Cir.1967). To that end, it is clear that the district court may hold an evidentiary hearing and make factual determinations. *Id.* "[T]he right to have a jury determine issues of fact turns essentially on whether the claim to which those issues relate is legal or equitable." *Hensley v. E.R. Carpenter Co., Inc.,* 633 F.2d 1106, 1110 n. 5 (5th Cir. Unit A 1980).

"The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract." *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir.1989); *see also Blum*, 709 F.2d at 1467 (referring to an order enforcing a settlement agreement as "the remedy of specific performance"). A claim for specific performance is an equitable action. *Hensley*, 633 F.2d at 1110 n. 5. "This is so even if the party resisting specific enforcement disputes the formation of the contract." *Adams*, 876 F.2d at 709–10. Purely equitable claims, even those involving factual disputes, are matters to be resolved by the court rather than a jury. *Hensley*, 633 F.2d at 1110 n. 5. Ford consequently has no right to a jury trial.

## III. CONCLUSION

We therefore AFFIRM the district court's order enforcing the settlement memorandum of October 17.