Marvin NORWOOD et al., Plaintiffs,

v.

RAYTHEON COMPANY
et al., Defendants.

No. EP–04–CA–127–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Jan. 17, 2006.

Steven M. Klepper, James P. Ulwick, Kramon & Graham, P.A., Baltimore, MD, Neil F. Mara, Jonathan Auerbach, Berger & Montague, P.C., Philadelphia, PA, Enrique Moreno, Attorney at Law, El Paso, TX, Melissa H. Maxman, Kelly D. Eckel, Bronwyn L. Roberts, Alice B. Burkin, James A. Plaisted, for Plaintiffs.

Michael Dierkes, Kirkland, Ellis, Chicago, IL, Carole A. Cheney, Joel Blanchet, Kevin T. Van Wart, Mark N. Osborn, Kemp, Smith, Duncan & Hammond, El Paso, TX, J. Wylie Donald, Charles F. Rysavy, McCarter & English, LLP, Newark, NJ, Joanna Shally, Heather Lamberg Kafele, Shearman & Sterling, New York, NY, Heather Lamberg Kafele, Thomas S. Martin, Shearman & Sterling, Raymond B. Biagini, McKenna Long & Aldridge LLP, Shawn D. Bryant, William J. Cople, III, Joe G. Hollingsworth, Donald W. Fowler, Spriggs & Hollingsworth, Washington, DC, Mitzi T. Shannon, Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ALL MEDICAL MONITORING CLAIMS AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS ALL CLAIMS ASSERTED BY THE BUND ZUR UNTERSTUTZUNG

MARTINEZ, District Judge.

On this day, the Court considered: (1) Defendants Raytheon Company, Lucent Technologies Inc., General Electric Corporation, Honeywell International, Inc., ITT Industries, Inc., and ITT–Gilfillan, Inc.'s (collectively "Defendants"): (a) "Motion to Dismiss All Medical Monitoring Claims" and (b) "Motion to Dismiss All Claims Asserted by the Bund Zur Unterstutzung," collectively filed[1] on May 4, 2004; (2) Plaintiffs' "Consolidated Opposition to: (a) Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1); (b) Defendants' Motion to Dismiss All Claims Asserted by the Bund and All Medical Monitoring Claims; (c) Defendants' Joint Motion to Dismiss the

---

1. Defendants filed a single motion entitled "Defendants' Motion and Memorandum in Support Thereof to Dismiss All Claims Asserted by the Bund Zur Unterstutzung and All Medical Monitoring Claims in *Bund Zur Unterstutzung Radargeschädigter E.V. v. Raytheon, et al.*" ("Motion to Dismiss"). The

Court separates the Motion to Dismiss into two separate motions for the sake of clarity. Also, the Court notes that the named plaintiff in the above-captioned cause has been changed from Bund Zur Unterstutzung Radargeschädigter E.V. ("the Bund") to Marvin Norwood.

Fraudulent Concealment (Count XI) and Civil Conspiracy (Count XII) Claims in Plaintiffs' Second Amended Complaint; and (d) Joint Motion of ITT and Honeywell to Dismiss Putative Liability Joint Issues Certification Class Action for Failure to State a Claim" ("Response"), filed on June 8, 2004; and (3) Defendants' "Reply in Support of Their Motion to Dismiss all Claims Asserted by the Bund and All Medical Monitoring Claims" ("Reply"), filed on June 18, 2004 in the above-captioned cause.

After due consideration, the Court is of the opinion that Defendants' Motion to Dismiss All Medical Monitoring Claims should be granted and that Defendants' Motion to Dismiss All Claims Asserted by the Bund Zur Unterstutzung should be denied as moot for the reasons set forth below.[2]

## I. FACTUAL BACKGROUND

This case concerns the allegedly negligent conduct of Defendants in designing, manufacturing, and marketing radar equipment.[3] Plaintiffs, currently seeking class certification, consist of thirteen individual-named plaintiffs allegedly exposed to radars, and the Bund, which alleges to be "a non-profit advocacy group that seeks to educate and advocate on behalf of its members which include radar operators, mechanics, and technicians." Pls.' Second Am. Original Pet., at 5, ¶ 14.

Plaintiffs allege that Defendants, comprised of several designers, manufacturers, and marketers of radar equipment, (1) did not adequately shield transmitter tubes in their radars, thereby emitting dangerous amounts of x-ray radiation and (2) failed to adequately warn Plaintiffs of health risks

associated with radiation exposure. *Id.* at 13, ¶¶ 46, 52–56. Plaintiffs attempt to certify two separate classes. Plaintiffs the Bund, Hans–Joerg Nimschke, Heinz Liehmann, Joseph Schraml, Ulf Waldvogel, and Henry Hofmann ("Medical Monitoring Plaintiffs") seek to certify a class ("the Medical Monitoring Class") consisting of radar operators, mechanics, and technicians exposed to radiation "but *not yet affected* with an illness or injury caused by such exposure." *Id.* at 3, ¶ 6 (emphasis added). In contrast to the Medical Monitoring Class, Plaintiffs Graciela Neutzler, individually and as next friend of minor children Vanessa Priscilla Neutzler and Chantal Alexa Neutzler, and as executrix of the estate of her husband Stephan Neutzler, Joan Fridriksson, individually and on behalf of all other statutory death beneficiaries, and as executrix of the estate of her husband Thor Fridriksson, Klaus Schneider, Daniel Duncan, Jack Cooper, Henning Schimm, Christa Schimm, Miriam Schimm, Harald Schwankl, and Erwin Bast seek the certification of a class ("the Liability Issue Certification Class") consisting of "[a]ll radar technicians, operators, and/or mechanics who have suffered and/or are suffering certain illnesses, injuries and/or death as a direct and proximate result of exposure" to radiation caused by Defendants' "design, manufacture and distribution of Radar Devices pursuant to Texas law." *Id.* at 4, ¶ 8.

Medical Monitoring Plaintiffs seek relief in the form of "a fund to be administered by the Court to finance the performance of such medical monitoring and surveillance services as are deemed reasonably and medically necessary to protect Medical Monitoring Plaintiffs from an increased

---

2. At this time, the Court chooses only to address the issues discussed in this Order.

3. "Radar (radio detection and ranging) operates by generating and transmitting electro-

magnetic energy into space and detecting the echo returned from reflecting objects or targets." Pls.' Second Am. Original Pet., at 11, ¶ 36.

risk of harm and disease." *Id.* at 3, ¶ 6. The requested medical monitoring services would include "preventative screening, care and treatment of conditions resulting from the use of Defendants' Radar Devices, direct medical consultation and independent scientific studies to quantify the adverse health effects, both physical and emotional, of exposure to ionizing radiation, to take preventative action, and to obtain early detection and diagnosis of disease, and care for any disease and/or injury determined to be associated with the use of Defendants' Radar Devices." *Id.* at 55–56, ¶ 289.

On May 4, 2004, Defendants collectively filed their (1) Motion to Dismiss all Medical Monitoring Claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and (2) Motion to Dismiss All Claims Asserted by the Bund pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants' Motion to Dismiss All Medical Monitoring Claims argues that Texas does not recognize medical monitoring as an independent cause of action. Defendants' Motion to Dismiss All Claims Asserted by the Bund argues that the Bund does not have associational standing to assert any claims. The Court will discuss each motion in turn.

## II. DISCUSSION

### A. Motion to Dismiss All Medical Monitoring Claims

#### 1. 12(b)(6) Standard

Rule 12(b)(6) permits the dismissal of all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion may be used to challenge the entire complaint or only part of a pleading, such as a single count or a claim for relief."

*Doe v. Sabine Parish School Bd.*, 24 F.Supp.2d 655, 658 (W.D.La.1998). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Defendants argue that Plaintiffs' medical monitoring claims are not legally cognizable under Texas law. This issue is dispositive of Plaintiffs' medical monitoring claims. Therefore, a motion to dismiss pursuant to Rule 12(b)(6) is the proper mechanism to test the viability of Plaintiffs' medical monitoring claims.

#### 2. Application

Whether the Court should recognize Plaintiffs' medical monitoring claims is an issue of Texas state law.[4] When deciding an issue of state law, a federal court is "bound to apply the law as interpreted by the state's highest Court." *Barfield v. Madison County, Miss.*, 212 F.3d 269, 272 (5th Cir.2000). However, "[i]f the state's highest court has not spoken on the particular issue, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Id.* (internal quotation omitted); *see also Wentwood Woodside I, LP v. GMAC Commercial Mortg. Corp.*, 419 F.3d 310, 323 (5th Cir.2005) (making an "Erie guess" on an issue of Texas law previously undecided by any Texas court). In this respect, "[i]n matters of [state] substantive law, [a federal court's] relationship to the [state's highest court] is all but identical to that of a [state] intermediate appellate court." *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980). Additionally, when considering the decisions of intermediate state appellate courts, a federal court is bound by the intermediate appellate court's decision "unless convinced by other persuasive data

---

4. All parties assume for purposes of Defendants' Motion to Dismiss that Plaintiffs' claims are governed by Texas substantive law.

Defs.' Mot. to Dismiss, at 10. Accordingly, the Court limits its consideration to issues of Texas substantive law as well.

that the highest court would decide otherwise." *Barfield,* 212 F.3d at 272 (internal quotation omitted). Also, a state trial court's decision must be "attributed some weight." *Comm'r of Internal Revenue v. Bosch's Estate,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (internal quotation omitted).

 In addition to state precedent, a federal court may look to "analogous decisions, considered dicta, scholarly works and other reliable data." *Hollis v. Hill,* 232 F.3d 460, 465 (5th Cir.2000). This includes looking to the decisions of other jurisdictions. *Id.* at 469 (looking to the law of other jurisdictions because Nevada had not addressed the relevant issue). However, a federal court should not "expand state law beyond its presently existing boundaries." *Barfield,* 212 F.3d at 272. Furthermore, as compared to a state intermediate court in the same position, a federal court within the Fifth Circuit predicting what a state's highest court would decide should be less willing to make a "substantive innovation."[5] *Rhynes,* 629 F.2d at 410. If no state appellate decision has approved of a theory of recovery or defense, even in dicta, a federal court "will not create innovative theories of recovery or defense under local law." *Cimino v. Raymark Indus.,* 151 F.3d 297, 314 (5th Cir.1998) (internal quotation omitted) (refusing to adopt the theories of alternative liability, concert of action, enterprise liability, or market share liability where no Texas appellate decision had approved of the theories, "even in dicta").

### a. Texas Precedent

The Court begins its inquiry by examining Texas precedent. All parties agree that the Texas Supreme Court has not addressed whether to adopt medical monitoring as a cause of action. Pls.' Resp., at 21; Defs.' Mot. to Dismiss, at 12.[6] As evidence that the Texas Supreme Court would allow medical monitoring claims if confronted with the issue, Plaintiffs first point to a Texas appellate decision, *Crofton v. Amoco Chems. Co.,* No. 01–01–00526–CV, 2003 WL 21297588 (Tex. App—Houston [1st Dist.] May 30, 2003, pet. denied) (unpublished), in which the court, in Plaintiffs' words, "assumed the existence of a cause of action" for medical monitoring. Pls.' Resp., at 22. However, in *Crofton* the appellate court merely upheld the trial court's decision granting a no evidence summary judgment against plaintiffs on their medical monitoring claims. *Crofton,* 2003 WL 21297588, at *6. Whether Texas recognizes medical monitoring as a cause of action was not at issue. Next, Plaintiffs point to a Texas trial court decision, Pls.' Resp., Ex. B, *Earthman v. Am. Home Prods.,* No. 97–10–03790, 1998 WL 2024150 (9th Dist. Ct., Montgomery County, Tex., October 19, 1998) (unpublished) (hereinafter *"Earthman"*), in which the court, in Plaintiffs' words, "recognized medical monitoring and went so far as to grant class certification for a medical monitoring class." Pls.' Resp., at 22. However, the *Earthman* court merely issued a two-page order certifying a class on behalf of "all

---

**5.** It is possible that other circuits take a more liberal approach to deciding novel questions of state law. *See Torres v. Goodyear,* 867 F.2d 1234, 1238 n. 1 (9th Cir.1989) (contrasting the Ninth Circuit's approach to the "posture of restraint" assumed by the Fifth Circuit "when it comes to deciding novel questions of state law").

**6.** Texas Rule of Appellate Procedure 58 ("Rule 58") establishes a procedure for "[t]he Supreme Court of Texas [to] answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." TEX.R.APP. P. 58. However, the certification procedure established by Rule 58 is not available to this Court as a federal trial court.

Texas residents who have ingested ... the diet drugs Pondimin ... or Redux .... [excluding] all such persons who have filed individual personal injury suits related to these drugs ... with respect to the following cause(s) of action: ... and that seek relief in the form of an injunction creating a medical screening program for Class Members." Pls.' Resp.', Ex. B, *Earthman*, at 1–2. The *Earthman* court, contrary to Plaintiffs' suggestion, did not specifically address whether medical monitoring claims are cognizable in Texas. In fact, the Court is not aware of a single instance where a Texas court has considered and evaluated the validity of medical monitoring claims as a cause of action.

### b. Analogous Texas Case Law— Temple–Inland Forest Products Corp. v. Carter

■ Because Texas courts have not directly and specifically addressed medical monitoring claims, the Court will look to other reliable sources in making its "Erie guess." In *Temple–Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88 (Tex. 1999), the Texas Supreme Court considered a legal issue analogous to deciding whether to accept medical monitoring claims. In *Temple–Inland*, the Texas Supreme Court rejected a claim for mental anguish damages resulting from exposure to asbestos fibers in the absence of present physical injuries. 993 S.W.2d at 93. In rejecting mental anguish claims in the absence of present physical injuries, the court cited three policy considerations. First, mental anguish claims in the absence of present physical injury "make it very difficult for judges and juries to evaluate which exposure claims are serious and which are not." *Id.* Second, the difficulty in assessing the seriousness of mental anguish claims in the absence of present physical injury leads to unpredictable

liability, "with some claims resulting in significant recovery while virtually indistinguishable claims are denied altogether." *Id.* Third, allowing such suits could lead to the proliferation of claims, resulting in suits "caused by exposure that has not resulted in disease [competing] with suits for manifest diseases for the legal system's limited resources." *Id.*

Medical monitoring claims and the mental anguish claims rejected in *Temple–Inland* are arguably similar in nature. First, both types of claims seek to establish liability and damages in the absence of a present physical injury. *See Temple–Inland*, 993 S.W.2d at 90 (noting that the plaintiffs sought recovery despite not presently suffering from asbestos-related diseases); *Metro–North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 439, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (rejecting medical monitoring claims because they would allow for recovery of medical monitoring costs for a "plaintiff without symptoms or disease"); *Wood v. Wyeth–Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849, 856 (Ky.2002) (noting that medical monitoring causes of action "do not require a showing of present physical injury"). Second, both types of claims rely, at least in part, on the arguably increased risk of suffering an injury in the future. An increased risk of suffering an injury or contracting a disease in the future is typically an element of a medical monitoring cause of action. *Metro–North*, 521 U.S. at 450, 117 S.Ct. 2113 (listing as a typical requirement of a medical monitoring cause of action that "as a proximate result of the exposure, the plaintiff suffers a significantly increased risk of contracting a serious latent disease") (citing *In re Paoli R. Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir.1990)).[7] Like plaintiffs asserting medical monitoring claims, the plain-

---

7. The *Paoli* court determined that a medical monitoring cause of action requires a plaintiff

to show the following:

tiffs in *Temple–Inland* relied on an increased risk of injury in the future. 993 S.W.2d at 90. Although the plaintiffs had not yet manifested a disease, the plaintiffs presented evidence of an increased risk of developing a disease as a result of asbestos exposure to support their mental anguish claims. *Id.* Furthermore, the court framed the question whether to award mental anguish damages as whether the plaintiffs could recover "for their increased risk and reasonable fear of possibly developing asbestos-related diseases that they do not currently have and may never have." *Id.* at 92.

Because mental anguish and medical monitoring claims are similar in nature, all three policy considerations the *Temple– Inland* court cited in rejecting mental an-

> (1) [the][p]laintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant;
> (2) [a]s a proximate result of exposure, [the] plaintiff suffers a significantly increased risk of contracting a serious latent disease;
> (3) [t]hat increased risk makes periodic diagnostic medical examinations reasonably necessary; [and]
> (4) [m]onitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.
> These factors would, of course, be proven by competent expert testimony.

916 F.2d at 852 (predicting Pennsylvania law).

**8.** The *Metro–North* Court used the term "emotional distress" rather than "mental anguish." However, the two terms appear functionally equivalent.

**9.** Buckley, the plaintiff in *Metro–North*, was a railroad worker alleging negligent exposure to asbestos. 521 U.S. at 427, 117 S.Ct. 2113. Buckley sued both for mental anguish damages and for medical monitoring costs despite the fact he had not manifested any symptoms of a disease. In rejecting Buckley's claim for mental anguish damages, the Court cited the following reasons: "(a) special difficult[y] for judges and juries in separating valid, impor-

guish claims are equally applicable to Plaintiffs' medical monitoring claims. In fact, the U.S. Supreme Court cited difficulties for judges and juries, unpredictable liability, and a multiplicity of suits when rejecting both mental anguish[8] claims and medical monitoring claims as remedies for violations of the Federal Employer's Liability Act ("FELA").[9] *Metro–North*, 521 U.S. at 438–44, 117 S.Ct. 2113.[10]

Based on the *Temple–Inland* decision, the Texas Supreme Court appears likely to reject medical monitoring claims. Like the *Metro–North* Court, the Texas Supreme Court appears disposed to rely on the same policy considerations in rejecting medical monitoring claims that it relied on in rejecting mental anguish claims in the absence of a present physical injury.[11] In

tant claims from those that are invalid, or trivial; (b) a threat of unlimited and unpredictable liability; and (c) the potential for a flood of comparatively unimportant, or trivial, claims." *Id.* at 433, 117 S.Ct. 2113 (internal quotations and citations omitted). Similarly, in rejecting Buckley's medical monitoring claims, the Court cited "special difficulties for judges and juries," "uncertainty as to the amount of liability," and a potential for a "flood of less important cases." *Id.* at 441– 42, 117 S.Ct. 2113 (internal quotations omitted).

**10.** The *Metro–North* decision attempted to find "support in the common law" when deciding whether to allow mental anguish and medical monitoring claims. 521 U.S. at 444, 117 S.Ct. 2113. As a result, state courts deciding whether to adopt medical monitoring as a cause of action have found the *Metro– North* decision persuasive. *See, e.g., Wood*, 82 S.W.3d at 857 (recognizing that "[a]lthough *Metro–North* had to do with a federal worker's compensation statute, the Court was clearly speaking to the more general issue of medical monitoring").

**11.** *See supra* note 9 (noting that the *Metro– North* Court cited difficulties for judges and judes, unpredictable liability, and a potential flood of claims in rejecting both emotional distress and medical monitoring claims).

fact, it is likely that the Texas Supreme Court would again cite the *Metro–North* decision itself to reject medical monitoring as a cause of action, in the same way it relied on *Metro–North* to reject mental anguish claims.[12]

### c. Medical Monitoring Claims in Other Jurisdictions

In addition to looking at analogous case law within Texas, the Court can look to other jurisdictions to aid its prediction. American courts generally allow medical monitoring expenses as a remedy when a present physical injury has resulted from a defendant's negligence. *See Metro–North*, 521 U.S. at 438, 117 S.Ct. 2113 (noting that "a plaintiff injured through negligence can recover related reasonable medical expenses as an element of damages"). However, medical monitoring as an independent cause of action in the absence of a present physical injury is neither universally rejected nor accepted. *Id.* at 440, 117 S.Ct. 2113. Several states have adopted medical monitoring as a cause of action. *See, e.g., Petito v. A.H. Robins Co.*, 750 So.2d 103, 105 (Fla.Dist.Ct.App. 1999) (deciding that it is "proper for a court of equity to create and supervise a fund for the purpose of monitoring the condition of plaintiffs when it has been shown that such monitoring is reasonably necessary"); *Burns v. Jaquays Min. Corp.*, 156 Ariz. 375, 752 P.2d 28, 33 (1987) (holding that "plaintiffs should be entitled to such regular medical testing and evalua-

tion as is reasonably necessary and consistent with contemporary scientific principles applied by physicians experienced in the diagnosis and treatment of" asbestos-related injuries); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1006, 25 Cal.Rptr.2d 550, 863 P.2d 795 (Cal.1993) (concluding that "a reasonably certain need for medical monitoring is an item of damage for which compensation should be allowed"); *Ayers v. Jackson Tp.*, 106 N.J. 557, 525 A.2d 287, 312 (1987) (determining that "the cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary"). However, it appears that *Petito* constitutes the only state decision adopting medical monitoring as a cause of action since the U.S. Supreme Court's decision in *Metro–North*. The majority of states considering medical monitoring as a cause of action since *Metro–North* have rejected the claims. *See Wood*, 82 S.W.3d at 858–59 (relying on *Metro–North* in rejecting medical monitoring claims); *Hinton v. Monsanto Co.*, 813 So.2d 827, 830–32 (Ala.2001) (citing the

---

**12.** Plaintiffs argue that *Metro–North* is inapplicable because whereas the *Metro–North* plaintiffs were seeking a lump-sum payment, Plaintiffs seek injunctive relief in the form of a court-monitored fund. Pls.' Resp., at 30. However, the Court finds the policy concerns cited by the *Temple–Inland* and *Metro–North* decisions applicable to a medical-monitoring fund. *See supra* pp. 664–665 (discussing the policy considerations relied on by the *Temple–Inland* and *Metro–North* decisions); *see also Wood*, 82 S.W.3d at 857 (relying on

*Metro–North* in rejecting "monitoring funds" and noting that allowing the claims would "impair [the defendant's] ability to fully compensate victims who emerge years later with actual injuries that require immediate attention"). Furthermore, Texas has not recognized any form of medical monitoring as a cause of action, and for the Court to adopt it in any form would constitute an extension of current Texas law. *See infra* Part II(A)(2)(d) (explaining that the Fifth Circuit has never recognized a new state cause of action).

policy reasons discussed by the *Metro–North* Court in rejecting medical monitoring claims); *Badillo v. Am. Brands, Inc.*, 117 Nev. 34, 16 P.3d 435, 440 (2001) (rejecting medical monitoring claims because: (1) they implicate complex problems of causality and proof, (2) the elements of medical monitoring are not uniform between jurisdictions, and (3) creating a new cause of action is generally a legislative function).[13]

It light of the foregoing, it appears likely that the Texas Supreme Court would follow the recent trend of rejecting medical monitoring as a cause of action. This is particularly true in light of the *Temple–Inland* court's reliance on *Metro–North* in an analogous context. *See supra* Part II(A)(2)(b) (explaining the *Temple–Inland* court's reliance on *Metro–North* in rejecting mental anguish claims in the absence of present physical injuries).[14]

### d. Making a Substantive Innovation of Texas Law

The Court's conclusion not to recognize medical monitoring as a cause of action is bolstered by its determination that doing so would constitute an improper "substantive innovation" of state law. *Rhynes*, 629 F.2d at 410. In fact, it appears that the Fifth Circuit has never expanded state law by recognizing a completely new cause of action. For example, in *Barfield*, the Fifth Circuit refused to expand Mississippi law to include a "tort type indemnification claim by a public entity against a public employee for acts in the course and scope of employment." 212 F.3d at 273. The *Barfield* court relied primarily on the fact that no Mississippi case had yet recognized this type of indemnity. *Id.* Additionally, the court's decision was bolstered by countervailing considerations "suggested by Mississippi statutory law and the substantial questions of federal preemption" that would be implicated by expanding law in the manner suggested by the claimant. *Id.*

Similarly, in *Rhynes*, the Fifth Circuit refused to adopt the "product line rule," which holds that "one who acquires a manufacturing business and continues to manufacture a line of its products assumes by force of law strict liability for defects in units of that line manufactured by its predecessors." 629 F.2d at 410. The plaintiff in *Rhynes* sought support for the product line rule from the fact that three states followed the rule and that one Texas Supreme Court justice stated in a concurrence that strict liability against a manufacturer of a faulty product should be extended to the maximum. *Id.* The court found these arguments "meager" in light of the fact that adopting the product line rule would represent "at least a radical extension of Texas product liability theory, and at most a shift to a new additional basis for liability." *Id.*

---

13. *See supra* note 10 (explaining why state courts considering whether to adopt medical monitoring as a cause of action have found *Metro–North* persuasive).

14. Even assuming that the majority of states allow medical monitoring as a cause of action, the Court disagrees with Plaintiffs' contention that this is a sufficient reason for a federal court to recognize a new state cause of action. Plaintiffs point out that the Fifth Circuit stated that "absent evidence to the contrary, we presume that [the state] courts would adopt the prevailing rule if called upon to do so." Pls.' Resp., at 25 (citing *Hensley v. E.R. Carpenter Co.*, 633 F.2d 1106, 1109 (5th Cir.1980)). However, the *Hensley* court was not creating a new cause of action; it was deciding whether Mississippi would likely decide that "an unjustified reduction in rank conferred by an employment contract can constitute a breach of that contract." *Hensley*, 633 F.2d at 1109. The *Hensley* Court was merely determining the proper scope of a traditional breach of contract cause of action, based on the law in other jurisdictions and analogous decisions in Mississippi. *Id.*

Plaintiffs offer no example of the Fifth Circuit recognizing a new state cause of action. Plaintiffs argue that in *Hollis,* the Fifth Circuit "predicted that the Nevada Supreme Court would adopt a new *cause of action* for breach of fiduciary duty." Pls.' Resp., at 27 (emphasis added). However, the *Hollis* court did not create a new cause of action. *Hollis,* 232 F.3d at 469. It merely expanded the scope of the existing cause of action of breach of fiduciary duty to include a claim by a shareholder in a closely-held-corporation for a breach of duty owed to it by the other shareholders. *Id.* at 469. The *Hollis* court predicted that the Nevada Supreme Court would construe the breach of fiduciary duty cause of action to include such a claim if confronted with the issue, in accordance with the majority of other jurisdictions. *Id.* at 470.

In this case, Plaintiffs do not ask the Court merely to construe the scope of a traditional tort, but to create an entirely new cause of action. The Fifth Circuit has never taken such a step, and the Court would consider it a radical extension of Texas substantive law. *See Wood,* 82 S.W.3d at 858 (referring to medical monitoring claims as "a complex and sweeping change to traditional tort law"); *Badillo,* 16 P.3d at 438 (stating that "[m]edical monitoring is a novel, non-traditional tort and remedy"). Therefore, the Court declines Plaintiffs' invitation to create a cause of action for medical monitoring in Texas.

In summation, Texas courts have not had occasion to address medical monitoring as a cause of action. In addition, although some jurisdictions have recognized a medical monitoring tort, Texas appears unlikely to adopt medical monitoring as a cause of action if confronted with the issue. Furthermore, even if it were convinced that the Texas Supreme Court would be likely to adopt medical monitor-ing as a cause of action, the Court is mindful of the Fifth Circuit's reluctance to create a cause of action not currently recognized in the forum state. *See supra* pp. 667 – 668 (explaining that the Fifth Circuit has never expanded state law by creating a new cause of action). Therefore, the Court is of the opinion that Plaintiffs' medical monitoring claims should be dismissed.

### B. Motion to Dismiss All Claims Asserted by the Bund

The Bund is suing "on behalf of its membership as representative plaintiff of the Medical Monitoring Class in order to obtain prospective injunctive relief in the form of monitoring and surveillance services." Pls.' Second Am. Original Pet., at 6, ¶ 14. The Bund does not purport to represent the interests of plaintiffs already affected with illness or injury. *Id.* at 3, ¶ 6. Therefore, a dismissal of Plaintiffs' medical monitoring claims has the effect of dismissing the Bund as a party to the suit. Thus, Defendants' Motion to Dismiss All Claims Asserted by the Bund Zur Unterstutzung based on a lack of associational standing should be denied as moot.

### III. CONCLUSION

The Texas Supreme Court has not decided whether to allow medical monitoring as a cause of action. The Court predicts that the Texas Supreme Court is not likely to adopt medical monitoring if confronted with the issue. Furthermore, the Court's decision not to allow Plaintiffs' medical monitoring claims is bolstered by the fact that recognizing medical monitoring as an independent tort would represent a radical extension of currently existing Texas law. Finally, the Court's dismissal of Plaintiffs' medical monitoring claims effectively dismisses the Bund as a party to the suit,

rendering moot Defendant's challenge to the standing of the Bund.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss All Medical Monitoring Claims is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Bund Zur Unterstutzung Radargeschädigter E.V. is **DISMISSED.**

**IT IS FINALLY ORDERED** that Defendants' Motion to Dismiss All Claims Asserted by the Bund Zur Unterstutzung is **DENIED AS MOOT.**